[No. 28194-9-III.   Division Three.   March 15, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. TYLER W. GASSMAN, *Appellant*.

---

[4] *Strickland*, 466 U.S. at 696.

602

*Janet G. Gemberling* and *Julia Anne Dooris* (of *Gemberling & Dooris PS*), for appellant.

*Steven J. Tucker, Prosecuting Attorney,* and *Mark E. Lindsey, Deputy,* for respondent.

*Jacqueline McMurtrie,* and *Michael L. Cook, Karen S. Park,* and *Mark J. Arnot, Legal Interns,* on behalf of the Innocence Network, amicus curiae.

¶1 Brown, J. — Tyler W. Gassman appeals his convictions for first degree robbery while armed with a deadly weapon, two counts of first degree assault while armed with a deadly weapon, and two counts of drive-by shooting. He contends the trial court erred by denying his request for a new trial based on newly discovered evidence. The State cross-appeals, contending the court erred in imposing a mitigated exceptional sentence. In his statement of additional grounds for review (SAG), Mr. Gassman contends his convictions violate double jeopardy and the trial court erred in granting the State's motion to amend the information on the day of trial. We affirm.

## FACTS

¶2 In April 2008, Clifford Berger and Joni Jeffries arranged with Eric Weskamp to purchase oxycontin from Anthony Kongchunji. About 10:00 p.m. on April 17, Mr. Kongchunji and several other men arrived at Mr. Berger and Ms. Jeffries' home. Mr. Kongchunji told Mr. Weskamp to come outside with the money. Mr. Weskamp got into Mr. Kongchunji's truck with Mr. Kongchunji and Matthew Dunham, a juvenile. Mr. Weskamp realized something was wrong and started to get out of the truck, but he was immediately "confronted by a bunch of people in bandannas and masks." Report of Proceedings (RP) at 222.

¶3 The men beat Mr. Weskamp with the back of a shotgun and stuck a pistol in his mouth, chipping a tooth.

The men stole Mr. Berger and Ms. Jeffries' money and left in the truck. Mr. Berger and a friend attempted to follow the men in the friend's car but stopped when the men started firing at them.

¶4 Police later arrested Mr. Dunham on a separate oxycontin-related robbery and he indentified the individuals involved in the incident at the Berger-Jeffries' home in exchange for a lesser sentence. Mr. Dunham identified Mr. Gassman as one of the men who participated in the robbery. Mr. Gassman's role was to rob Mr. Weskamp after Mr. Kongchunji called him out.

¶5 The State charged Mr. Gassman with first degree robbery; two counts of attempted first degree murder, or in the alternative, first degree assault; and two counts of drive-by shooting. The information stated that the events occurred "on or about April 15, 2008." Clerk's Papers (CP) at 1-2.

¶6 On January 12, 2009, the State successfully requested to amend the information, changing the date of the occurrence from April 15 to April 17. Due to the lateness in amending the information, the court imposed $8,000 in sanctions against the State and continued the trial date to February 2, 2009.

¶7 Before Mr. Gassman's trial, Mr. Kongchunji pleaded guilty to the crime. Mr. Kongchunji received a 14-year sentence; Mr. Dunham received an 18-month sentence. Mr. Kongchunji originally acknowledged Mr. Gassman's involvement, but defense counsel believed Mr. Kongchunji was changing his story and hoped he would testify that Mr. Gassman was not involved. Mr. Kongchunji's attorney, however, informed Mr. Gassman's attorney that Mr. Kongchunji would not testify based on his Fifth Amendment privilege against self incrimination (Mr. Kongchunji was concerned about incrimination for other crimes if he testified).

¶8 At trial, Mr. Dunham testified he was "a hundred percent confident" that Mr. Gassman was involved in the

Berger-Jeffries robbery. RP at 365. He also related his plea agreement.

¶9 On February 17, 2009, a jury found Mr. Gassman guilty of first degree robbery, two counts of first degree assault, and two counts of drive-by shooting. The jury specially found Mr. Gassman was armed with a deadly weapon at the time of the robbery and the assaults.

¶10 The court sentenced Mr. Gassman to 129 months on all counts plus three 60-month firearm enhancements, for a total sentence of 309 months. The court arrived at 129 months by imposing 129 months on one of the first degree assault counts and then running all other sentences concurrently to the 129-month sentence. Because the concurrent sentences resulted in a mitigated exceptional sentence, the trial court entered written findings of fact, finding the presumptive sentence was clearly excessive, Mr. Gassman was induced by others to commit the crime, and the victim more likely than not was the initiator.

¶11 On April 3, 2009, Mr. Gassman requested a new trial under CrR 7.8(b)(2), arguing newly discovered testimony from Mr. Kongchunji could exonerate him. Mr. Kongchunji provided an affidavit stating Mr. Gassman was not involved in any of the crimes, "includ[ing] the . . . robbery of Eric Weskamp." CP at 378. Mr. Gassman offered a letter from Mr. Kongchunji to a codefendant's father stating that Mr. Gassman was "not involved with any of the alleged incidents and the reason I know this is because I was involved." CP at 380. Mr. Kongchunji goes on to explain to the father the details of an unrelated April 21, 2008 robbery. Mr. Kongchunji claims he refused to testify at the trial on the April 21 robbery because he was threatened with additional charges if he changed his story from the one he previously told to police.

¶12 In his request for a new trial, Mr. Gassman offered Mr. Kongchunji's testimony from another trial where Mr. Kongchunji testified that he and Mr. Dunham had devised a plan while in jail to pin certain robberies on Mr. Gassman in order to protect Mr. Dunham's brother and their friend.

The defendant in that case was found not guilty. Mr. Kongchunji made no reference to the Berger-Jeffries robbery.

¶13 The court filed a memorandum decision denying Mr. Gassman's motion. It found Mr. Kongchunji did not "vindicate Mr. Gassman or somehow suggest that Mr. Gassman did not commit the crimes for which he was convicted." CP at 531. Further, "[t]here simply is no evidence presented by Mr. Gassman to support the notion that the jury verdict of February 17, 2009, would probably change if a new trial were granted." CP at 531.

¶14 The court found Mr. Kongchunji was available to testify, and Mr. Gassman's lawyer "chose" not to call him. CP at 531. The court found if Mr. Kongchunji attempted to rely upon a Fifth Amendment privilege, "the Court could have compelled Mr. Kongchunji's testimony." CP at 531. Lastly, the court found Mr. Kongchunji's testimony would have been cumulative or simply impeaching. The court noted the State could have called detectives to impeach Mr. Kongchunji's testimony regarding matters he disclosed to police with statements he made implicating Mr. Gassman. Mr. Gassman appealed and the State cross-appealed the mitigated exceptional sentence.

## ANALYSIS

### A. New Trial Motion

¶15 The issue is whether the trial court erred by abusing its discretion in denying Mr. Gassman's request for relief from judgment under CrR 7.8(b)(2). Mr. Gassman contends he should have been granted a new trial based on newly discovered evidence from Mr. Kongchunji. We disagree.

¶16 We review a CrR 7.8 ruling for an abuse of discretion and will not reverse a denial absent an abuse of that discretion. *State v. Swan*, 114 Wn.2d 613, 641-42, 790 P.2d 610 (1990). The court abuses its discretion when it bases its decisions on untenable or unreasonable grounds.

*State v. Partee*, 141 Wn. App. 355, 361, 170 P.3d 60 (2007). A trial court will not grant a new trial on the basis of newly discovered evidence unless the moving party demonstrates that the evidence "(1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching." *State v. Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981) (emphasis omitted). The absence of any one of these factors is grounds to deny a new trial. *Id.*

¶17 When considering whether newly discovered evidence will probably change the trial's outcome, the trial court considers the credibility, significance, and cogency of the proffered evidence. *State v. Barry*, 25 Wn. App. 751, 758, 611 P.2d 1262 (1980). Significantly, the standard is "probably change," not just possibly change the outcome. *Williams*, 96 Wn.2d at 223. "[D]efendants seeking postconviction relief face a heavy burden and are in a significantly different situation than a person facing trial." *State v. Riofta*, 166 Wn.2d 358, 369, 209 P.3d 467 (2009).

¶18 The trial court found Mr. Kongchunji's letter and testimony from a different trial did not specifically exonerate Mr. Gassman here. Mr. Kongchunji mentioned in his letter and affidavit that Mr. Gassman was not involved in the incident, but Mr. Kongchunji went on to discuss a different incident in his letter and then did not mention the Berger-Jefferies' incident in his later trial testimony. Moreover, if Mr. Kongchunji testified, the State would be permitted to impeach his testimony with his prior statements incriminating Mr. Gassman, thus rendering his testimony less credible and potentially more harmful to Mr. Gassman. "[I]n evaluating [the] probative force of newly presented evidence 'the [c]ourt may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.'" *Riofta*, 166 Wn.2d at 372 (third alteration in original) (quoting *Schlup v. Delo*, 513 U.S. 298, 332, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).

¶19 Indeed, if Mr. Kongchunji was a recanting witness (he was not because he did not testify at Mr. Gassman's trial), the court would be required to assess his credibility. *See State v. D.T.M.*, 78 Wn. App. 216, 221, 896 P.2d 108 (1995) (when witness recants by affidavit, court should hold hearing to evaluate witness's credibility). Regarding timing, Mr. Kongchunji changed his story after he made a plea agreement but still received a 14-year sentence compared to Mr. Dunham's 18-month sentence. This evidence makes him appear more vindictive toward Mr. Dunham than credible.

¶20 Based on the suspect reliability of Mr. Kongchunji's changed information and the strength of Mr. Dunham's testimony regarding his certainty of Mr. Gassman's involvement, it is not probable that the outcome of a new trial would be different. Recantation statements are "inherently questionable." *State v. Macon*, 128 Wn.2d 784, 801, 911 P.2d 1004 (1996). While Mr. Gassman points to a later trial where Mr. Kongchunji testified and the defendant was acquitted, the time, place, and victims were completely different. Thus, any impact Mr. Kongchunji could have on Mr. Gassman's trial, based on the other trial, is merely a possibility not a probability. Given all, Mr. Gassman has not shown the outcome of the trial would probably change if Mr. Kongchunji testified. This factor alone gave the court tenable grounds to deny the motion for a new trial.

¶21 The second and third factors for a new trial relate to whether Mr. Gassman was aware of Mr. Kongchunji's testimony before trial and whether Mr. Kongchunji was available to testify. Before trial, Mr. Kongchunji implicated Mr. Gassman, but after Mr. Kongchunji pleaded guilty and received a 14-year sentence, Mr. Kongchunji changed his story. Defense counsel asked if Mr. Kongchunji would be willing to testify on Mr. Gassman's behalf, but Mr. Kongchunji responded he would claim the Fifth Amendment privilege against self-incrimination relating to other offenses. Mr. Gassman argues this

threat of asserting the Fifth Amendment privilege was sufficient to make Mr. Kongchunji unavailable and, therefore, not "discovered" before trial. But, discovery requires due diligence. *Williams*, 96 Wn.2d at 223. And, the court aptly noted that Mr. Kongchunji was no longer in jeopardy as to the incident involving Mr. Gassman because Mr. Kongchunji had already entered a guilty plea. In other words, Mr. Gassman could have used due diligence to compel Mr. Kongchunji's testimony. Based on the above, the evidence was not newly discovered since it could have been, and indeed was, discovered before trial.

¶22 Next, evidence is material and, thus, meets the fourth criteria for a new trial if it strongly indicates that the defendant did not commit the crime. *State v. Scott*, 150 Wn. App. 281, 297, 207 P.3d 495 (2009). Mr. Kongchunji wanted to testify to Mr. Gassman's innocence. Since this is evidence that Mr. Gassman did not commit the crime, the evidence would probably be material.

¶23 The fifth factor for a new trial is met if the evidence offered is not cumulative or impeaching. *State v. Sublett*, 156 Wn. App. 160, 194, 231 P.3d 231 (2010). In *Sublett*, the appellant requested a new trial based on a new witness who could exonerate him. *Id.* at 179. The court held the new witness's testimony would merely be used to impeach another witness who placed the appellant at the scene of the crime and, therefore, did not support a new trial. *Id.* at 194. Here, like in *Sublett*, Mr. Kongchunji's testimony would have been used to impeach Mr. Dunham's testimony. Thus, Mr. Gassman does not meet the fifth criteria for a new trial.

¶24 Separately, Mr. Gassman contends he received ineffective assistance of counsel based on his defense counsel's failure to call Mr. Kongchunji as a witness. However, he fails to assign error to this issue. We will review a claimed error if it "is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." RAP 10.3(g). Even so, "this court will reach the merits if the issues are reasonably clear from the brief, the opposing

party has not been prejudiced and this court has not been overly inconvenienced." *State v. Grimes*, 92 Wn. App. 973, 978, 966 P.2d 394 (1998). Here, given that the State has responded to this improperly raised issue, we will consider the merits.

¶25 To prevail on an ineffective assistance of counsel claim, the defendant must show that defense counsel's objectively deficient performance prejudiced him. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). We strongly presume counsel is effective, and the defendant must show that there was no legitimate strategic or tactical reason supporting defense counsel's actions. *Id.* at 336. To demonstrate prejudice, the defendant must show that trial counsel's inadequate performance probably changed the outcome at trial. *Id.* at 335. "The decision whether to call a witness is ordinarily a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel." *State v. Kolesnik*, 146 Wn. App. 790, 812, 192 P.3d 937 (2008).

¶26 "We do not address both prongs of the ineffective assistance test if the defendant's showing on one prong is insufficient." *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007) (citing *Strickland*, 466 U.S. at 697). As discussed above, Mr. Gassman has not shown that the outcome of his trial would have been any different with Mr. Kongchunji's testimony. Without this showing, Mr. Gassman cannot establish prejudice. *See McFarland*, 127 Wn.2d at 335 (prejudice requires showing trial outcome would have been different). Moreover, Mr. Kongchunji was an unpredictable witness with varying statements; the decision not to compel his testimony may have been tactical. Thus, Mr. Gassman's ineffective assistance of counsel claim fails.

¶27 Finally, amicus asserts "snitch" testimony is inherently unreliable. Justice Sanders in his dissent in *State v. Ish*, 170 Wn.2d 189, 208 n.18, 241 P.3d 389 (2010), recently

commented, " '[T]he feds gave $100 million to snitches in one recent year – their reliability is dubious.' " (Quoting Ryan Blitstein, *The Inside Dope on Snitching*, MILLER-McCUNE, Oct. 23, 2009, *available at* http://www.miller-mccune.com/legal-affairs/the-inside-dope-on-snitching-3387/ (last visited Sept. 27, 2010).) But, Washington courts recognize that an informant or snitch may have an interest in testifying against the defendant; therefore, trial courts must give 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 6.05, at 184 (3d ed. 2008) (WPIC) whenever there is uncorroborated accomplice testimony. *State v. Sherwood*, 71 Wn. App. 481, 485, 860 P.2d 407 (1993) (quoting *State v. Harris*, 102 Wn.2d 148, 155, 685 P.2d 584 (1984), *overruled on other grounds by State v. Brown*, 111 Wn.2d 124, 761 P.2d 588 (1988)). WPIC 6.05 states, "Testimony of an accomplice, given on behalf of the [plaintiff], should be subjected to careful examination in the light of other evidence in the case, and should be acted upon with great caution. You should not find the defendant guilty upon such testimony alone unless, after carefully considering the testimony, you are satisfied beyond a reasonable doubt of its truth." The court provided this instruction to Mr. Gassman's jury. A jury is presumed to follow the court's instructions. *State v. Yates*, 161 Wn.2d 714, 763, 168 P.3d 359 (2007). The jury found Mr. Dunham's testimony was truthful beyond a reasonable doubt. This court will not substitute its judgment for that of the jury's. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

## B. Mitigated Exceptional Sentence

¶28 The issue on cross review is whether the sentencing court erred by imposing a mitigated exceptional sentence. The State contends the court's reasons for imposing the exceptional sentence were not substantial and compelling. We disagree.

¶29 A trial court may impose a sentence outside the standard sentencing range if it finds that substantial

and compelling reasons justify an exceptional sentence. RCW 9.94A.535. In reviewing an exceptional sentence, we may reverse if we find "(a) [e]ither that the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard sentence range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient." RCW 9.94A.585(4). We review the trial court's findings of fact made in support of an exceptional sentence under the clearly erroneous standard. *State v. Nordby*, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986). Under that standard, reversal is required only if the findings are not supported by substantial evidence. *State v. Branch*, 129 Wn.2d 635, 646, 919 P.2d 1228 (1996).

¶30 The court found the presumptive sentence was clearly excessive. Mr. Gassman's presumptive sentence would have been 551 months. Mr. Gassman was 21 years old when he committed the crimes. His criminal history contained a prior felony conviction for attempted first degree robbery and a prior juvenile adjudication for residential robbery. Considering his age and his criminal history, substantial evidence supports the trial court's finding that the presumptive sentence of almost 46 years was clearly excessive.

¶31 Last, the court found Mr. Gassman was induced by others to commit the crime, and the victim more likely than not was the initiator of related criminal activity. Mr. Weskamp was the negotiator of an illegal drug deal. He contacted Mr. Kongchunji for the purchase of oxycontin. In this sense, Mr. Weskamp was the initiator. Although several individuals were involved, Mr. Kongchunji was friendly with Mr. Weskamp and masterminded the robbery. Thus, substantial evidence supports the court's findings that Mr. Gassman was induced by others to commit the crimes and the victim, more likely than not, initiated the contact with Mr. Kongchunji.

¶32 In sum, substantial and compelling reasons justify the sentencing court's mitigated exceptional sentence. *Id.*

## C. SAG

¶33 In his pro se SAG, Mr. Gassman contends his assault and drive-by shooting convictions violate double jeopardy and he was prejudiced by the State's late amendment of the information.

¶34 Mr. Gassman was convicted of two counts of drive-by shooting and two counts of first degree assault for the shots fired at Mr. Berger and his friend, as they followed the get-away truck.

¶35 Both the United States Constitution and the Washington Constitution protect a person from twice being placed in jeopardy for the same offense. U.S. CONST. amend. V; CONST. art. I, § 9; *In re Pers. Restraint of Borrero*, 161 Wn.2d 532, 536, 167 P.3d 1106 (2007). Both provisions prohibit multiple punishments imposed for the same act unless the legislature intended to authorize multiple punishments for the crimes in question. *State v. Baldwin*, 150 Wn.2d 448, 454, 78 P.3d 1005 (2003). Where a defendant is convicted under multiple criminal statutes for the same act, the court must determine whether the legislature intended multiple punishments, first by looking to the language of the statutes and alternatively by employing the "same evidence" test. *Borrero*, 161 Wn.2d at 536-37 (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)). Here, the statutory language does not disclose any legislative intent, so we apply the same evidence test—whether the offenses are identical in fact and in law. *Id.* at 537. If each offense contains an element not contained in the other requiring proof of a fact that the other does not, the offenses are not the same. *Id.*

¶36 Under the same evidence test, the two crimes of drive-by shooting and assault do not violate double jeopardy because each requires proof of facts that the other does not. Drive-by shooting requires the discharge of a firearm, which the other crime does not. RCW 9A.36.045(1). Assault requires intent to inflict great bodily harm, not required for

drive-by shooting. *See* RCW 9A.36.011(1), .045(1). Division Two of this court has held that second degree assault and drive-by shooting convictions do not violate double jeopardy. *State v. Vincent*, 131 Wn. App. 147, 158, 120 P.3d 120 (2005). Because each crime requires proof of facts not required by the other, Mr. Gassman's double jeopardy rights were not violated.

¶37 Mr. Gassman next challenges the State's late amendment of the information. CrR 2.1(d) allows an information "to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced." The defendant has the burden of showing prejudice. *State v. Brown*, 74 Wn.2d 799, 801, 447 P.2d 82 (1968). The trial court's ruling on a motion to amend an information is reviewed for abuse of discretion. *State v. James*, 108 Wn.2d 483, 490, 739 P.2d 699 (1987).

¶38 Here, Mr. Gassman was on notice that the offense date was "on or about April 15, 2008." CP at 1-2. Changing an offense date by just two days would be covered under the "on or about" language. Further, other courts have held, " 'Where the [information] alleges that an offense allegedly occurred "on or about" a certain date, the defendant is deemed to be on notice that the charge is not limited to a specific date.' " *State v. Bergin*, 214 Conn. 657, 574 A.2d 164, 173 (1990) (alteration in original) (quoting *United States v. Leibowitz*, 857 F.2d 373, 379 (7th Cir. 1988)); *see also United States v. Mitov*, 460 F.3d 901, 907 (7th Cir. 2006). Further still, no prejudice is shown if time remains to prepare a defense. *State v. Murbach*, 68 Wn. App. 509, 512, 843 P.2d 551 (1993). The court granted the motion to amend on January 12, 2009 and continued the trial until February 2, 2009. Mr. Gassman had ample time to prepare his defense; thus, he cannot meet his burden to show prejudice.

¶39 Affirmed.

SWEENEY, J., concurs.

¶40 KULIK, C.J. (dissenting) — Tyler Gassman was convicted of robbery, two assaults, and two drive-by shootings, and sentenced to more than 25 years. His counsel's[1] failure to pursue exculpatory testimony from Anthony Kongchunji constituted deficient performance and prejudiced Mr. Gassman. I, therefore, dissent from the majority. I would vacate Mr. Gassman's convictions and remand for a new trial.

¶41 The test for ineffective assistance is well established and requires the defendant to show that "(1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

*Deficient Performance*

¶42 The reasonableness of counsel's representation is viewed in light of all of the circumstances. *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991). There is a strong presumption that counsel's representation was effective. *State v. Garrett*, 124 Wn.2d 504, 520, 881 P.2d 185 (1994) (quoting *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985)). Generally, the decision to call a particular witness is presumed to be a matter of legitimate trial tactics. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 742, 101 P.3d 1 (2004). However, this presumption can be overcome by showing that counsel failed to investigate or subpoena a necessary witness. *Id.*

¶43 Our Supreme Court has recently reaffirmed that "a criminal defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's perfor-

---

[1] Appellate counsel did not serve as trial counsel.

mance.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260, 1269 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). Significantly, *Grier* also recognizes that "[n]ot all strategies or tactics on the part of defense counsel are immune from attack." *Id.* at 33-34. "'The relevant question is not whether counsel's choices were strategic, but whether they were reasonable.'" *Id.* at 34. (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)).

¶44 Here, defense counsel stopped pursuing Mr. Kongchunji's testimony when Mr. Kongchunji's counsel denied access to him. The Ninth Circuit Court of Appeals has repeatedly found similar failures to adequately investigate and present known exculpatory evidence at trial to constitute deficient and prejudicial performance by counsel. *See, e.g.*, *Lord v. Wood*, 184 F.3d 1083, 1096 (9th Cir. 1999) (finding deficient performance and prejudice where "trial counsel had at their fingertips information that could have undermined the prosecution's case, yet chose not to develop this evidence and use it at trial"); *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999) ("A lawyer who fails adequately to investigate, and to introduce into evidence, [information] that demonstrate[s] his client's factual innocence, or that raise[s] sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance.").

¶45 At a posttrial hearing, the trial court pointed out that defense counsel could have used due diligence to at least attempt to compel Mr. Kongchunji's testimony. This followed defense counsel's submitting the letter and declaration of Mr. Kongchunji. The letter stated, in part:

> I found out that Paul [Statler], Tyler [Gassman], and Robert [Larson] lost their recent trial and I'm stunned. I don't see how the jury could believe Matthew [Dunham] at all because I've read his statement[s] and they are all lies.
>
> I thought that I should let you know that Paul, Tyler, and Robert were not involved with *any of the alleged incidents* and the reason I know this is because I was involved.

Clerk's Papers (CP) at 380 (emphasis added). Likewise, when testifying in Mr. Statler's second trial, Mr. Kongchunji stated that he committed the Dishman robbery with the "[s]ame people I *always* go rob people with; Larry, Nick, Matt." CP at 486 (emphasis added). Clearly, this testimony refers to Larry Dunham, Nicholas Smith, and Matthew Dunham, codefendants in other robberies. Mr. Kongchunji possessed crucial exculpatory evidence. His testimony was necessary to ensure that Mr. Gassman received a fair trial.

¶46 The majority concludes that defense counsel's failure to call Mr. Kongchunji as a witness at trial was a matter of trial tactics. Accordingly, the majority states, "Mr. Kongchunji was an unpredictable witness with varying statements; the decision not to compel his testimony may have been tactical." Majority at 612.

¶47 But this is not the issue. Defense counsel had already made the tactical decision to call Mr. Kongchunji; what he lacked was the legal knowledge and skills to secure his testimony. Stated differently, he was apparently unaware of the procedures available to him to compel Mr. Kongchunji's testimony.

¶48 Defense counsel admitted that he did not interview or call Mr. Kongchunji to testify because he believed that "Mr. Kongchunji's testimony became unavailable to me by operation of attorney-client privilege and the Constitutional Rights of Mr. Kongchunji regardless of the level of diligence employed in seeking out his testimony."[2] CP at 376.

¶49 Defense counsel knew that Mr. Kongchunji possessed crucial exculpatory evidence, yet he never asked the court for leave to conduct an interview or to rule on whether Mr. Kongchunji's testimony would have received Fifth Amendment protection. Instead, he believed that Mr. Kongchunji was unavailable if his counsel said he was. As a result, it is not possible to know whether or to what extent

---

[2] The Rules of Professional Conduct permit counsel to contact a represented witness in such a situation after obtaining permission from the court. RPC 4.2.

Mr. Kongchunji would have been excused from testifying at trial.[3]

¶50 The State also contended the reason defense counsel made the decision not to call Mr. Kongchunji was a matter of trial tactics. But no competent attorney after having learned the full extent of Mr. Kongchunji's testimony would have failed to put him on the stand, especially given the State's reliance on a witness no more credible than Mr. Kongchunji. Counsel's failure to adequately investigate and call a witness purporting to have actual knowledge of Mr. Gassman's innocence was unreasonable in this case and, therefore, deficient.

## *Prejudice*

¶51 To demonstrate prejudice, Mr. Gassman must show that

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *A reasonable probability is a probability sufficient to undermine confidence in the outcome.*"

*State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Mr. Gassman "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.[4]

---

[3] Had Mr. Kongchunji been excused from testifying by the trial court, counsel would have then preserved the unavailability of this testimony for purposes of his new trial motion.

[4] The majority appears to apply a heightened prejudice standard when reviewing Mr. Gassman's ineffective assistance claim when it writes that "[w]ithout this showing [that the outcome of his trial would probably have been different], Mr. Gassman cannot establish prejudice." Majority at 612. The *Strickland* Court noted that the showing of prejudice that must be made under the newly discovered evidence standard is significantly higher than the showing that must be made under an ineffective assistance claim. *Strickland*, 466 U.S. at 694 ("The high standard for newly discovered evidence claims presupposes that all the essential elements of a presumptively accurate and fair proceeding were present. . . . An ineffective assistance claim asserts the absence of one of the crucial assurances

¶52 Mr. Kongchunji had a powerful incentive to implicate Mr. Gassman prior to receiving a 14-year prison term for his own admitted involvement in this crime and the related robberies; namely, a desire to avoid an even more severe sentence. With this incentive exhausted, Mr. Kongchunji had no discernable motive to continue falsifying information. To the contrary, Mr. Kongchunji no doubt weighed considerable disincentives prior to coming forward, including criminal liability for perjury or similar crimes, as well as implicating Larry Dunham and Nicholas Smith in another robbery. That Mr. Kongchunji would be willing to take such risks without perceivable reward strongly suggests that his testimony would be credible.

¶53 To say that Mr. Kongchunji's testimony is necessary understates its importance. The State secured a conviction in this matter based solely upon Matthew Dunham's uncorroborated testimony. Detective William Francis testified that Matthew Dunham's statement was the only evidence police had against Mr. Gassman. Mr. Kongchunji's letter and subsequent testimony in Mr. Statler's second trial not only exculpate Mr. Gassman in respect to the Berger-Jeffries robbery, but also explain how and why Mr. Gassman became implicated by Matthew Dunham and Mr. Kongchunji in the first place. This evidence also has proved cogency. Mr. Statler was acquitted following a subsequent trial alleging his involvement in the related Dishman robbery after Mr. Kongchunji testified to its participants. There can be no doubt that Mr. Kongchunji's testimony was necessary here.

¶54 Focusing, as I am required to do, "on the fundamental fairness of the proceeding whose result is being challenged,"[5] I conclude that counsel's deficient performance prejudiced Mr. Gassman to an extent that undermines confidence in the outcome of his trial and creates a serious likelihood that justice has not been done.

that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower.").

[5] *Strickland*, 466 U.S. at 696.

622

¶55 Accordingly, I respectfully dissent from the majority's conclusion that Mr. Gassman received effective assistance of counsel. I would reverse Mr. Gassman's convictions and remand for a new trial.

Review denied at 172 Wn.2d 1002 (2011).