IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34052-0-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DANILO ELIAS SALGUERO-ESCOBAR, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — A jury convicted Danilo Salguero-Escobar of first degree rape and first degree burglary. The trial court granted Mr. Salguero-Escobar's motion for a new trial on the basis that his cellular records received from his cellular carrier soon after trial were newly discovered evidence.

The State of Washington appeals and asserts the trial court abused its discretion because the cellular records do not meet the newly discovered evidence test. We agree. But we may affirm the trial court on any correct ground, even a ground not considered by the trial court. Even so, we choose to remand so the trial court can consider whether to grant a new trial on a different ground—that substantial justice has not been done.

FACTS

Mr. Salguero-Escobar first met Joette Talley at a garage sale she was hosting at her home on June 6, 2015. Mr. Salguero-Escobar was interested in a few items, and the two talked. The next day, he returned to the garage sale to purchase and collect some items. The testimony of these two diverges at this point.

A.    MS. TALLEY'S TESTIMONY

Ms. Talley talked to Mr. Salguero-Escobar about the garage sale and helped him load his station wagon after he purchased a few items. The next time she saw him was around June 25 when she caught him climbing over her fence. He asked her if she knew anyone who could offer him some yard work and then left. In July or August, she was sitting on her back porch when Mr. Salguero-Escobar came around the corner of her house, presumably after having climbed over her fence and into her yard again. This severely startled her and she immediately and forcefully told him to leave, which he did. The next time she saw him was September 8. She was taking a bath inside her home when Mr. Salguero-Escobar surprised her in her bathroom and raped her. Ms. Talley denied ever talking with Mr. Salguero-Escobar on the telephone and maintained throughout the trial that the only conversations that occurred between them were those outlined above.

### B.    MR. SALGUERO-ESCOBAR'S TESTIMONY

Mr. Salguero-Escobar gave Ms. Talley his phone number at the garage sale. One or more days later, she called him around 7:00 p.m. He was unable to recall the exact date of the call, and throughout his testimony he referred to the date of the call as June 8, 9, or 10. Ms. Talley sounded upset and a little bit drunk. He asked if he could come to her house, and she said he could. They talked for about seven hours that night. She showed him around her house. Eventually, they ended up in the bedroom, and they had consensual sex. During his testimony, he offered a hand-drawn floor plan of her house to substantiate his claim that she had shown him her house.

Around June 25, he went to her house again. He saw her in her yard. She started to let him in the fence, but the fence was chained and it took so long for her to unchain it, he decided to jump the fence. They talked and she gave him a tour of her garden. He originally denied returning to the house in July or August and jumping over the fence. But later on direct, he remembered he was there one other time and said he just visited with Ms. Talley. He could not remember the date of that visit.

On September 8, he went to her house because he was worried about her. He jumped her fence and knocked on her door, but got no response. He looked in her windows but could not see her. Eventually, he heard loud music playing from inside her

3

house. Her back door was open so he went in and looked for her. He eventually found her in the bathroom taking a bath and crying. He startled her when he called out her name, but eventually she invited him to take a bath with her. Soon after, they had consensual sex.

C.    PROCEDURE THROUGH MOTION FOR NEW TRIAL

On October 14, 2015, the State charged Mr. Salguero-Escobar with first degree burglary and first degree rape. Two days later, he was arraigned on the charges. The parties originally agreed to a trial date of November 2, 2015. Later, and at Mr. Salguero-Escobar's request, the trial court continued the trial date to December 1, 2015.

On November 20, defense counsel sent a subpoena duces tecum to his client's cellular phone carrier for his cellular phone records from June 1, 2015 through September 9, 2015. Two days later, the carrier responded by fax and objected to the subpoena duces tecum as not being specific. On November 23, defense counsel faxed a revised subpoena duces tecum to the carrier. On the cover sheet, defense counsel indicated the request was "Urgent" and wrote, "Reissued Subpoena—Trial 12/1/15— Please Expedite." Clerk's Papers (CP) at 85. Defense counsel also called the carrier on November 27, November 30, December 1, and December 4 to request the records.

4

On December 1, but prior to the start of trial, defense counsel advised the trial court that his client wanted a continuance. Defense counsel stated he disagreed with the request and assured the trial court he was ready to begin trial, and his client would not be prejudiced by going forward. Defense counsel argued that the December 1 trial would benefit his client because it would prevent the State from having additional time during which it might bolster its case. The trial court denied Mr. Salguero-Escobar's request for a continuance.

The case proceeded to trial on December 1, 2015. The jury returned its verdict on December 4, 2015, finding Mr. Salguero-Escobar guilty of first degree burglary and first degree rape.

On December 7, 2015, defense counsel received the cellular phone records. The records establish that Ms. Talley called Mr. Salguero-Escobar at 10:42 p.m. on June 7, 2015, and that the call lasted 13 minutes. Mr. Salguero-Escobar promptly filed a motion for a new trial pursuant to CrR 7.5(a)(3), on the basis that the cellular records were newly discovered evidence. The State opposed the motion. The trial court agreed that the cellular records were newly discovered evidence and entered an order granting Mr. Salguero-Escobar a new trial. The State timely appealed the trial court's order.

## ANALYSIS

This court reviews a trial court decision to grant a new trial for abuse of discretion. *State v. Hawkins*, 181 Wn.2d 170, 179, 332 P.3d 408 (2014). "A trial court's wide discretion in deciding whether or not to grant a new trial stems from 'the oft repeated observation that the trial judge who has seen and heard the witnesses is in a better position to evaluate and adjudge than can we from a cold, printed record.'" *Id.* (quoting *State v. Wilson*, 71 Wn.2d 895, 899, 431 P.2d 221 (1967)). "'[A] much stronger showing of an abuse of discretion will ordinarily be required to set aside an order granting a new trial than one denying a new trial.'" *Hawkins*, 181 Wn.2d at 179-80 (alteration in original) (quoting *State v. Brent*, 30 Wn.2d 286, 290, 191 P.2d 682 (1948)). A court abuses its discretion when the decision is manifestly unreasonable, or is based on untenable grounds or reasons. *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995). If there is an inadequate legal basis for granting a new trial, it must be considered an abuse of discretion. *State v. Evans*, 45 Wn. App. 611, 615, 726 P.2d 1009 (1986).

Trial courts are given discretion to grant a new trial for a variety of reasons, including newly discovered evidence. CrR 7.5(a)(3). Washington follows an established five-prong test to determine whether a new trial should be granted on the basis of newly discovered evidence. The party requesting a new trial must demonstrate the evidence

6

No. 34052-0-III
*State v. Salguero-Escobar*

(1) will probably change the result of the trial, (2) was discovered since the trial, (3) could

not have been discovered before trial by the exercise of due diligence, (4) is material, and

(5) is not merely cumulative or impeaching. *State v. Jackman*, 113 Wn.2d 772, 779, 783

P.2d 580 (1989). "'The absence of any of the five factors is grounds for the denial of a

new trial, or the reversal of the grant of a new trial.'" *Id.* (quoting *State v. Williams*, 96

Wn.2d 215, 223, 634 P.2d 868 (1981)).

A.   PARTS TWO AND THREE OF THE FIVE-PRONG TEST ARE NOT SATISFIED

   1.   *First Prong: The evidence will probably change the result of the trial*

   To determine whether the evidence will probably change the result of the trial, the

court considers the "credibility, significance, and cogency of the proffered evidence."

*State v. Gassman*, 160 Wn. App. 600, 609, 248 P.3d 155 (2011). No physical evidence

exists in this case. The guilty verdicts were entirely based on the jury's determination that

Ms. Talley was more credible than Mr. Salguero-Escobar. This means that all evidence

that tends to bolster or impeach either witness's credibility had a significant influence on

the result of the trial.

   The credibility of the cellular records cannot really be doubted. The records are a

standard call log from Mr. Salguero-Escobar's cellular phone carrier. The significance of

the call in question is obvious. A 13 minute call from Ms. Talley soon after the two met

7

bolsters Mr. Salguero-Escobar's assertion that the two developed a friendship. It also

contradicts Ms. Talley's assertion that they only spoke a few times, and those times were

in person. In a case such as this where credibility was a key issue, the trial court did not

abuse its discretion in finding that the cellular records would likely change the result of

the trial.

2.    *Second and Third Prongs: The evidence was both discovered and was discoverable before trial with the exercise of due diligence*

"[E]vidence is not 'newly discovered' if it was known, or under the circumstances

must have been known, or by the exercise of reasonable diligence should have been

known by the moving party at any time prior to the submission of the case." *Davenport v.*

*Taylor*, 50 Wn.2d 370, 374, 311 P.2d 990 (1957). Here, Mr. Salguero-Escobar's own

cellular records were known to him before trial. His knowledge of these records was the

reason he asked for a second trial continuance. We conclude the trial court abused its

discretion when it found the records were not known before trial, and the records could

not have been discovered before trial with the exercise of due diligence. We nevertheless

continue our analysis.

3.    *Fourth Prong: The evidence was material*

Evidence is material if it strongly indicates the defendant did not commit the

crime. *Gassman*, 160 Wn. App. at 611. The trial court heard the testimonies and saw the

8

witnesses. The trial court is in the best position to determine whether the cellular records strongly indicate Mr. Salguero-Escobar did not commit the crimes. The trial court did not abuse it discretion in so finding.

4.      *Fifth Prong: The evidence was not merely cumulative or impeaching*

Additional evidence is cumulative when it is evidence of the same kind to the same point. *Williams*, 96 Wn.2d at 223-24. Here, the evidence is not of the same kind. The evidence presented at trial was testimonial, which required the jury to determine whether Ms. Talley or Mr. Salguero-Escobar was more credible. Here, the cellular records are tangible documentary evidence that confirms some of Mr. Salguero-Escobar's version of events and discredits some of Ms. Talley's version of events. We conclude the trial court did not abuse its discretion when it found that the evidence was not merely cumulative or impeaching.

B.      AFFIRMANCE ON OTHER GROUNDS SUPPORTED BY THE RECORD

An appellate court may affirm a trial court on any correct ground, even though that ground was not considered by the trial court. *Nast v. Michels*, 107 Wn.2d 300, 308, 730 P.2d 54 (1986); *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 757, 320 P.3d 77 (2013). CrR 7.5(a)(8) permits a trial court to grant a new trial on the basis that substantial justice has not been done. This basis requires the trial court to give "'definite reasons of

9

law and facts'" justifying a new trial. *Evans*, 45 Wn. App. at 614 (quoting *Williams*, 96 Wn.2d at 228).

The trial court made various comments in support of its decision to grant a new trial. These comments would support our affirming the trial court on the basis that substantial justice was not done at trial. We note the trial court's central concern, expressed in its oral ruling, when it granted Mr. Salguero-Escobar a new trial:

> [A] criminal case is not about winning or losing. It is about justice. And it is about assuring that justice is done. In fact, the purpose of [the] criminal rules is for the just determination of every criminal proceeding. So that, I think, has to be kind of the prism through which these rules are evaluated.

Report of Proceedings (RP) at 568. In those cases where the first jury had little or no tangible evidence but convicted a defendant, "justice" may permit granting a new trial so a second jury might examine key tangible evidence central in determining the credibility of key witnesses. The trial court believed the cellular records were vital because Ms. Talley maintained throughout trial that no conversations between her and Mr. Salguero-Escobar took place other than those few in-person conversations to which she testified. Yet the cellular records establish that *she* called Mr. Salguero-Escobar, and the length of her call was longer than a quick passing along of information. The trial court noted that the cellular records were unusually important because "the entirety of the case consist[ed] of one person's sworn testimony, the victim's, against the other['s], the defendant." RP at

10

570. The trial court stated that the cellular records were "extraordinarily weighty given the circumstances of the entire case." RP at 570. And because of this, the trial court found the cellular records probably would change the result of the trial.

In addition to these reasons, the trial court noted that the time between arraignment and trial was "extraordinarily abbreviated," and usually would take several months given the severity of the charges. RP at 568. Mr. Salguero-Escobar did everything within his limited power to not have the trial begin until he had his cellular records. He directed his attorney to request a continuance of the reset trial date, a date that was only one and one-half months after his arraignment. The trial court, because of defense counsel's own statements, denied Mr. Salguero-Escobar's motion for a second trial continuance. This is not a situation where the *defendant* gambled in going forward and lost.

The record permits us to affirm on the basis that substantial justice was not done. But trial courts, not appellate courts, should enter appropriate findings to support a new trial. For this reason, we remand this matter to the trial court for it to enter appropriate findings of fact and conclusions of law as to whether a new trial should be granted on the basis that substantial justice has not been done.

11

No. 34052-0-III

*State v. Salguero-Escobar*

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Fearing, C.J.                                    Pennell, J.