[No. 47505-9. En Banc. October 8, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. CLARENCE E. WILLIAMS, *Petitioner*.

*David Allen* (of *Allen & Hansen*), for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *J. Robin Hunt, Senior Deputy,* for respondent.

STAFFORD, J.—A jury found petitioner Clarence Williams guilty of robbery in the first degree, kidnapping in the first degree, and murder in the first degree. The trial judge set aside the verdicts and granted petitioner a new trial on several statutory grounds. The Court of Appeals reversed, holding that none of the grounds was applicable. We affirm the Court of Appeals.

The facts were set out in detail by the Court of Appeals in *State v. Williams,* 27 Wn. App. 430, 618 P.2d 110 (1980), thus, we need touch only the pertinent highlights here. At about 3:50 a.m. on September 25, 1978, the 7–11 store on Beacon Avenue South in Seattle was robbed and Laura Ann Bayliss, the night clerk, was abducted. During the robbery a hidden camera was activated producing pictures of a large black man dressed in an olive drab fatigue jacket and a cap, and wearing glasses. Two frames were of his left profile. Some 200 copies of the profile photographs were distributed by the police to aid in the apprehension of the robber and to find the victim. Copies were published in newspapers and displayed on television as well.

Ms. Bayliss' body was found on October 14 in the basement closet of a vacant house at 6309 Beacon Avenue South. She had been stabbed numerous times, and had been dead three to four weeks.

On October 16 an anonymous caller informed the police petitioner was possibly the man in the robbery photograph.

When petitioner was interviewed soon thereafter he was wearing a fatigue jacket and safety glasses. He admitted having been in 6309 Beacon Avenue South, including the basement, on three or four occasions during the previous six months. A subsequent search of his residence, located only four buildings from 6309, revealed many knives and pairs of safety glasses. He was also found to own clothing similar to that worn by the man in the "robbery–in–progress" photographs. More importantly, petitioner himself closely resembled the man in the photograph. Further, he revealed that both his wife and a close family friend initially thought he was the man in the picture.

At trial the State introduced the testimony of two eyewitnesses to the robbery. Alan Johnson and Bradley Farris testified they had gone to the 7–11 store at approximately 3:50 a.m. to purchase some cigarettes. When Farris started to enter the unlocked door he was confronted by a large black man in a fatigue jacket and hat who told him the store was closed. Farris persisted and, after a brief discussion, the man agreed to sell two packs of cigarettes for $2. Johnson testified he was suspicious and so observed the events closely from the car. Upon leaving the store's parking lot they drove to a telephone booth and called the police, reporting a suspected robbery.

After petitioner's arrest, Johnson identified him in a lineup but Farris identified another man. At trial, however, both identified petitioner as the man they had seen in the store that night.

After Johnson and Farris had testified, the prosecution learned for the first time that the sergeant in charge of petitioner's lineup had shown the assembled witnesses a 3–by 5–inch copy of the robbery–in–progress photograph minutes before they were to view the lineup. Sergeant Scheuffele testified, and a tape of the incident confirmed, that his exhibition of the picture had lasted only five to ten seconds and that it was shown from a distance of about four feet. His explanation was that he "wanted them to remember they had seen the photograph". The court ruled

this did not justify a dismissal of the case. Thereafter the court and counsel devised what was then considered to be the best method of handling the situation. This procedure will be discussed below.

During the trial, the State also produced testimony of the police officers involved with the investigation, an expert on fibers, and an anthropologist from the University of Washington who testified about the many similarities between discernable features in the robbery–in–progress photograph and petitioner. The jury also had ample opportunity to compare those photographs with petitioner's actual physical appearance in court.

Petitioner called 18 witnesses to counter the State's circumstantial evidence and to show that this was a case of mistaken identity. Petitioner's major witness was Larry Wilkins. Wilkins testified that on the night of the robbery he had been at the 19th Hole Tavern located across the street from the 7–11 store. He noticed two black men enter the tavern on three separate occasions between 9 and 12 o'clock that night. The larger one was wearing a fatigue jacket and hat. He felt they acted suspiciously. At the lineup and at trial he stated that although petitioner looked somewhat like the man in the tavern, he was sure it was not him because he remembered petitioner from his previous participation in softball. He also testified that on October 6, a few days after the robbery, he had seen the same man, dressed in the same manner, coming out of the Veterans Administration hospital and had notified the police. This was corroborated by the VA pharmacist who had also noticed a black man in a fatigue jacket and hat at the hospital that day. Despite repeated efforts by the police, both before and after trial, the man seen by Wilkins and the pharmacist was never identified.

The trial lasted 12 days; jury deliberations continued another 5. On the third day of deliberations a juror became ill and was excused. Instead of seeking a mistrial, petitioner elected to proceed with the remaining 11 jurors. The jury returned a "guilty" verdict on each of the three charges.

After the trial the police and defense continued to investigate the crime. The defense interviewed Richard Crookes, a security guard at the VA hospital, and discovered that he too had seen a black man at the VA pharmacy on October 6. Due to this and other reasons set out below the trial judge granted a new trial. The State appealed.

Petitioner first asserts the State (appellant below) failed to assign error to the findings of fact as required by RAP 10.3(g). Thus, he asserts those findings must be considered as verities on appeal. *Riley v. Rhay*, 76 Wn.2d 32, 33, 454 P.2d 820 (1969). The rule is inapplicable for two reasons, however.

■ First, we held in *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 710, 592 P.2d 631 (1979), that under RAP 1.2(a) a "technical violation of the rules will not ordinarily bar appellate review, where justice is to be served by such review. . . . [W]here the nature of the challenge is perfectly clear, and the challenged finding is set forth in the appellate brief, [this court] will consider the merits of the challenge." The nature of the challenge is clear and the challenged findings are, in fact, set forth in the State's appellate brief. Further, little purpose would be served by requiring strict compliance with RAP 10.3(g) in appealing a grant of a new trial given its unique procedural setting. *See Rock v. Rock*, 62 Wn.2d 706, 712, 384 P.2d 347 (1963).

■ Second, there were no disputed evidentiary facts which the trial court determined adversely to the State. Rather, the State's clearly disclosed dispute is with conclusions drawn from the facts. Some of these conclusions were erroneously labeled "findings of fact". Conclusions of law cannot be shielded from review by denominating them findings of fact.

We are firmly committed to the rule that when findings of fact are supported by evidence, none that are *truly* findings of *fact* will be disturbed on appeal. *Local 1296, Int'l Ass'n of Firefighters v. Kennewick*, 86 Wn.2d 156, 161, 542 P.2d 1252 (1975). It is the function of an appellate court to determine questions of law, however. If a conclusion of law

is incorrectly denominated a finding of fact, it is subject to review. *Id.* at 161–62; *State v. Washington Tug & Barge Co.,* 140 Wash. 613, 250 P. 49 (1926).

"'"A finding of fact is the assertion that a phenomenon has happened or is or will be happening independent of or anterior to any assertion as to its legal effect."'" *Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 283, 525 P.2d 774 (1974). Where findings *necessarily* imply one conclusion of law the question still remains whether the evidence justified that conclusion. *Cline v. Altose,* 158 Wash. 119, 126, 290 P. 809, 70 A.L.R. 1471 (1930). We are confronted with that question here, *i.e.,* whether the evidence justified the conclusions drawn by the trial judge whether labeled findings of fact or conclusions of law. Thus, we will consider the merits of the case.

The trial court stated five basic grounds for granting a new trial: (1) the proffered testimony of Officer Crookes constituted newly discovered evidence, CrR 7.6(a)(3); (2) the display of the robbery–in–progress photograph prior to the lineup was an irregularity in proceedings which prevented defendant from having a fair trial, CrR 7.6(a)(5); (3) the late disclosure of the photograph's exhibition constituted a surprise, CrR 7.6(a)(4); (4) the verdict was contrary to law and the evidence, CrR 7.6(a)(7); and (5) substantial justice had not been done, CrR 7.6(a)(8).

Except where questions of law are involved, a trial judge is invested with broad discretion in granting motions for new trial. The exercise of that discretion will not be disturbed on appeal absent an abuse of discretion. *State v. Marks,* 71 Wn.2d 295, 301–02, 427 P.2d 1008 (1967); *Bunnell v. Barr,* 68 Wn.2d 771, 775, 415 P.2d 640 (1966). It has been repeatedly pointed out, however, that such discretion does not give a trial court license to weigh the evidence and substitute its judgment for that of the jury, simply because it may disagree with the verdict. *Bunnell v. Barr, supra; Knecht v. Marzano,* 65 Wn.2d 290, 292–93, 396 P.2d 782 (1964); *accord, State v. Collins,* 72 Wn.2d 741, 745, 435 P.2d 538 (1967). In this state a trial judge is not deemed a

"thirteenth juror".

It is the province of the jury to weigh the evidence, under proper instructions, and determine the facts. It is the province of the jury to believe, or disbelieve, any witness whose testimony it is called upon to consider. If there is substantial evidence (as distinguished from a scintilla) on both sides of an issue, what the trial court believes after hearing the testimony, and what this court believes after reading the record, is immaterial. The finding of the jury, upon substantial, conflicting evidence properly submitted to it, is final.

*Rettinger v. Bresnahan,* 42 Wn.2d 631, 633–34, 257 P.2d 633 (1953), quoted in *Bunnell v. Barr, supra* at 777. *See also State v. Franks,* 74 Wn.2d 413, 417–18, 445 P.2d 200 (1968), and cases cited therein.

*Knecht v. Marzano, supra,* points out the three dimensional nature of the problem. The granting of a new trial by the trial judge involves the relationship and function of three entities: (1) the trial judge, (2) the jury, and (3) the appellate courts. A fine balance must be struck so that any one entity does not unduly usurp the functions of either of the other two, while still giving each sufficient latitude to fulfill its own legitimate function.

This balance was struck in criminal rule 7.6(a) which lists the grounds for granting a new trial. If a defendant's substantial right has been materially affected by one of the causes listed therein, a new trial may be granted. If, however, none of the enumerated grounds exist, the grant of a new trial would constitute an abuse of discretion as being based on untenable grounds. *See State v. Blight,* 89 Wn.2d 38, 40–41, 569 P.2d 1129 (1977). Thus, a limit is imposed on the discretion of trial courts and at the same time a framework for appellate review of the trial court's action is provided.

In this case the Court of Appeals found none of the grounds for granting a new trial enumerated by the trial judge was sufficient under the facts of this case. We agree.

The first ground relied upon by the trial judge was "newly discovered evidence", CrR 7.6(a)(3). A new trial will

not be granted on that ground unless the moving party demonstrates that the evidence (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; *and* (5) is not merely cumulative or impeaching. *State v. Franks, supra* at 418. The absence of any one of the five factors is grounds for the denial of a new trial, *see State v. Franks, supra,* or the reversal of the grant of a new trial, *see State v. Peele,* 67 Wn.2d 724, 731, 409 P.2d 663 (1966) (would not probably change the result of trial); *State v. Douglas,* 193 Wash. 425, 75 P.2d 1005 (1938) (due diligence not exercised); *Gross v. Department of Labor & Indus.,* 177 Wash. 675, 33 P.2d 376 (1934) (not newly discovered); *Peoples v. Puyallup,* 142 Wash. 247, 252 P. 685 (1927) (due diligence not exercised); *State v. Edwards,* 23 Wn. App. 893, 898, 600 P.2d 566 (1979) (merely impeaching).

The asserted newly discovered evidence was the proffered testimony of Mr. Crookes, a security guard at the VA hospital. He was first interviewed by the police on October 9 as well as a couple of days later. This was recorded in the police report, a complete copy of which was given to petitioner well before trial. Crookes testified at the hearing on the motion for a new trial that while on duty at the VA hospital on October 6 he had seen an individual wearing a fatigue jacket and distinctive hat, who he believed resembled the man in the robbery–in–progress photograph. This would have been on the same day Larry Wilkins and the pharmacist testified they had seen a similar man at the hospital. Crookes was not certain whether he had related this to the police and could not tell whether petitioner was the person he had seen in the pharmacy line. At the time of the trial Crookes was outside the state attending school. He was contacted by defense counsel only after the trial.

It is evident that any testimony given by Crookes would have been merely cumulative, thus failing the well established requirement set forth in *State v. Franks, supra* at 418. "Cumulative evidence is additional evidence of the

same kind to the same point." *Roe v. Snyder,* 100 Wash. 311, 314, 170 P. 1027 (1918). The only purpose of Crookes' testimony would be to corroborate Larry Wilkins' testimony that he apparently had seen the same person at the VA hospital on October 6 that he had seen at the 19th Hole Tavern the night of the robbery. This had already been corroborated once by the VA pharmacist who testified he had seen a black man in a fatigue jacket and hat on October 6. Crookes' testimony would merely have duplicated the pharmacist's testimony and would have added nothing because the latter's testimony was undisputed by the prosecutor. It was not a sufficient basis upon which to grant a new trial. As observed in *State v. Peele, supra* at 732–33, if such were the case there would be virtually no end to the litigation of an issue of fact, for each new trial inevitably leaves new avenues for investigating the facts anew. Hardly a case can be supposed but what, by diligent search, some additional evidence will be found that would, if offered at trial, have been admissible on one theory or another. The mere existence of such evidence does not alone justify the granting of a new trial.

The second reason given by the trial judge for granting a new trial was irregularity in the lineup procedure, its late disclosure and the asserted surprise. The relevant question is whether petitioner was prevented from having a fair trial.

We in no way condone the exhibiting of a photograph to witnesses immediately before they are to view a lineup. Nevertheless, the momentary exhibiting of the robbery–in–progress photograph was not so impermissibly suggestive as to give rise to a "very substantial likelihood of irreparable misidentification," *Simmons v. United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968). Thus the in–court identification of the eyewitnesses would not have been properly suppressed, and the trial court so held. Indeed, petitioner does not even suggest that a complete suppression was required. Rather, he asserts the late disclosure that the photograph had been exhibited hindered his opportunity to cross–examine the State witnesses

regarding its effect, thus depriving him of a fair trial.

As mentioned previously, the State first learned during trial that Sgt. Scheuffele had briefly shown the photograph to the witnesses immediately before the lineup. At that juncture full disclosure was made promptly to the court and to petitioner. A hearing was held outside the presence of the jury to explore the incident and its effects. The trial court ruled that the identification should not be suppressed, emphasizing three factors: the robbery–in–progress photograph was not necessarily of Williams; it was shown only briefly at a distance; and, in any event, all witnesses had seen the photograph previously.

After it was determined that the case would not be dismissed, the court and counsel discussed the alternatives. Defense counsel affirmatively stated he did not want to recall Johnson or Farris, thereby emphasizing their testimony and receiving a response from Johnson that the photograph in no way influenced his testimony. It was decided that the prosecution would have Sgt. Scheuffele and the main investigating officer explain what had occurred, and thereafter allow full cross–examination. The jury was thus fully apprised of what had occurred.

We agree with the Court of Appeals that a complete examination of the record shows that the harm, if any, created by a late disclosure of the incident did not deprive petitioner of his right to a fair trial. Additional cross–examination of Johnson would have added nothing to petitioner's case. Johnson testified, at the hearing outside the presence of the jury, that he did not remember having been shown the photograph but that in any event it had not influenced his identification. He also testified that his identification was made from his memory of events at the 7–11 store rather than from the photograph, and that his identification was based on factors other than those disclosed by the picture, most notably petitioner's stance and carriage. Examination on this issue would only have dispelled any inference that the incident influenced his identification.

There is another reason for our determination that

the claimed irregularity did not result in an unfair trial. Petitioner had many opportunities to request a mistrial and never did so. Had he felt the procedures used were inadequate for a fair trial, it was incumbent upon him to move for a mistrial at that time. He did not do so. Even after all the testimony was concluded and the jury was in the process of deliberating, petitioner declined to move for a mistrial when a sick juror was excused. It is obvious the defense did not feel greatly prejudiced by the late revelation of the incident until after the adverse verdict. The defense made a tactical decision to proceed, "gambled on the verdict", lost, and thereafter asserted the previously available ground as reason for a new trial. This is impermissible. *Nelson v. Martinson,* 52 Wn.2d 684, 689–90, 328 P.2d 703 (1958) (reversing grant of new trial); *see also Carabba v. Anacortes School Dist. 103,* 72 Wn.2d 939, 953, 435 P.2d 936 (1967); *Warren v. Hart,* 71 Wn.2d 512, 519, 429 P.2d 873 (1967) (Finley, C.J., dissenting); *Jones v. Hogan,* 56 Wn.2d 23, 27, 351 P.2d 153 (1960); *Sun Life Assurance Co. of Can. v. Cushman,* 22 Wn.2d 930, 945, 158 P.2d 101 (1945); *State v. Atkinson,* 19 Wn. App. 107, 575 P.2d 240 (1978) (no complaint at trial); *State v. Stamm,* 16 Wn. App. 603, 559 P.2d 1 (1976) (prosecutorial misconduct error not asserted at trial); *State v. Lewis,* 15 Wn. App. 172, 548 P.2d 587 (1976) (invited instructional error).

The trial court's third ground for granting a new trial was that the verdict was contrary to the law and the evidence. There is no indication the jury may have disregarded the instructions, or that the instructions were erroneous. Further, petitioner has made no argument on this issue. Consequently, we must conclude that the issue has been abandoned. *Transamerica Ins. Group v. United Pac. Ins. Co.,* 92 Wn.2d 21, 28–29, 593 P.2d 156 (1979); *Roberts v. Atlantic Richfield Co.,* 88 Wn.2d 887, 568 P.2d 764 (1977).

It is argued that the verdict was contrary to the evidence, however. Petitioner relies on *State v. Brent,* 30 Wn.2d 286, 300, 191 P.2d 682 (1948), which held, by a sharply divided

court, that it is not an abuse of discretion for a trial court to grant a new trial if there is a "substantial conflict in the evidence upon controlling issues".

On the other hand, the State argues that the proper standard is that set forth in *Bunnell v. Barr,* 68 Wn.2d 771, 777, 415 P.2d 640 (1966). *Bunnell,* decided 17 years later, held that if there is "substantial evidence . . . on both sides of an issue" the finding of the jury is final, and it is an abuse of discretion for a trial court to grant a new trial simply because the judge does not agree with the verdict. *Accord, Knecht v. Marzano,* 65 Wn.2d 290, 396 P.2d 782 (1964).

We agree with the State. *Brent* would permit a trial judge to invade the jury's fact–finding function and prevent appellate review by dropping an "iron curtain". *See Knecht v. Marzano,* 65 Wn.2d 290, 396 P.2d 782 (1964). It would also virtually inject the trial judge as a thirteenth juror permitting that judicial officer to independently determine credibility and weigh evidence.[1] Furthermore, it would appear that the adoption of *Brent* is made inadvisable by *Hudson v. Louisiana,* 450 U.S. 40, 67 L. Ed. 2d 30, 101 S. Ct. 970 (1981). In *Hudson* the trial judge granted a new trial on the ground that the verdict was "contrary to the evidence". The court held that, since the judge was not acting as a thirteenth juror but rather determined the legal sufficiency of the evidence, a retrial was barred by reason of double jeopardy, citing *Burks v. United States,* 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978). Thus, although we do not decide the issue here, we note the danger that a cavalier granting of new trials in cases like the instant one could cause subsequent retrials to be barred quite inadvertently. On the other hand, the standard of *Bunnell v. Barr, supra,*

---

[1] It has been noted that this prohibition of judges acting like jurors has a basis in the philosophy of our constitution. *Knecht v. Marzano,* 65 Wn.2d 290, 295, 396 P.2d 782 (1964), points out that "in our jurisdiction constitutional mandate elevates the factual decision–making function of the jury and limits or preempts this function from the trial judge by preventing his commenting upon and emphasizing or orienting the evidence in terms of the final jury decision."

would appear to preclude this possibility.

The last ground given for granting a new trial was that substantial justice had not been done. CrR 7.6(a)(8). A new trial may be granted on this ground only if the trial judge gives "definite reasons of law and facts" to justify its order. CrR 7.6(d); *Knecht v. Marzano, supra.* Objectively assessable reasons or facts must be set out so that meaningful appellate review of the exercise of discretion is possible. "Feelings or hunches" of the trial judge are not sufficient since they are not amenable to objective evaluation or appellate review and thus would lead to "nonreviewable trial judge discretion—in essence, no appeal whatsoever." *Knecht,* at 295.

Here, the trial judge gave no additional reasons for the determination that substantial justice had not been done. The petitioner was not prejudiced by the other grounds upon which the order was based and there being nothing more expressed concerning this ground, it too must be deemed insufficient.

Petitioner also urges this court to require a new trial based on *United States v. Agurs,* 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976) and *State v. Wright,* 87 Wn.2d 783, 557 P.2d 1 (1976). He asserts the failure of the police to accurately report what was allegedly told them by Crookes led to a failure of the prosecution to disclose allegedly exculpatory material. This, it is said, entailed a suppression of evidence which was violative of due process.

An examination of *Agurs* and *Wright* reveals the fallacy of petitioner's argument. In *Agurs,* the prosecution failed to disclose the victim's violent criminal record. The defense discovered the record 3 months after trial and moved for a new trial, saying it tended to support his self-defense argument. The Supreme Court held that a new trial was not warranted because it did not result in a denial of the defendant's right to a fair trial. The court noted that there was "'no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.'" *Agurs,*

427 U.S. at 109; *Moore v. Illinois,* 408 U.S. 786, 795, 33 L. Ed. 2d 706, 92 S. Ct. 2562 (1972). The mere possibility that an item of undisclosed information might have aided the defense, or might have affected the outcome of trial, did not establish "materiality" in a constitutional sense. The undisclosed evidence must create a reasonable doubt that did not otherwise exist for there to be a constitutional error mandating a new trial.

In *State v. Wright, supra,* a much more damaging suppression of evidence was held to mandate an arrest of judgment and dismissal. In *Wright* the police had destroyed the victim's clothing as well as the furnishings of the apartment where the body was found. The defense had been given no notice so as to permit testing. Since the evidence could very well have been exculpatory and since there was no remedial action which could be taken, we dismissed the case.

Here it is questionable whether the State actually suppressed Crookes' information. The defense was given complete access to all prosecution and police files. They disclosed an interview with Crookes but did not mention that he had seen the suspect. The interview and report were made at a time when the police had no good suspects and were still looking for the victim. Crookes testified at the new trial hearing that he was not certain he had even mentioned it to the police; the police officer testified Crookes had not told him he had seen the suspect.

Even if there was a failure to accurately record Crookes' interview, and if this could be broadly considered a "suppression," a new trial still would not be mandated. As explained previously, Crookes' proffered testimony was merely cumulative and at best involved only a tangential matter so negligible that it could not have created a reasonable doubt that did not otherwise exist. To require a new trial on these facts would be to hold that the inadvertent nondisclosure of any lead by the police would constitutionally mandate a new trial in a close case. *Agurs* and *Wright* do not require this and we decline to extend them to this extreme.

230

The Court of Appeals is affirmed.

BRACHTENBACH, C.J., ROSELLINI, UTTER, DOLLIVER, HICKS, WILLIAMS, and DIMMICK, JJ., and COCHRAN, J. Pro Tem., concur.

Reconsideration denied December 8, 1981.