IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35209-9-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DANILO ELIAS SALGUERO-ESCOBAR, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, C.J. — Without any tangible evidence, a jury found Danilo Salguero-Escobar guilty of first degree rape and first degree burglary. Three days later, defense counsel received cellular phone records that he had earlier subpoenaed. The records contradicted the complaining witness's testimony. The trial court granted Salguero-Escobar's motion for a new trial on the basis of CrR 7.5(a)(3), newly discovered evidence.

The State appealed, and we reversed. In our prior decision, we determined that the unintroduced evidence did not satisfy the newly discovered evidence test. In reversing, we remanded with instructions for the trial court to determine whether a new trial should

be granted under a different basis, CrR 7.5(a)(8), that substantial justice has not been done.

On remand, the trial court considered the cellular records and additional tangible evidence that further contradicted the complaining witness's trial testimony. After briefing and argument, the trial court determined that Salguero-Escobar should receive a new trial because substantial justice has not been done. The trial court then entered detailed findings and conclusions explaining the bases for its determination.

The State again appeals. We reject its arguments and affirm.

BACKGROUND

We previously set forth the facts and the procedural background of this case in *State v. Salguero-Escobar*, noted at 197 Wn. App. 1018, 2016 WL 7388651. We refrain from doing so again. But a short discussion of this court's prior decision and what happened on remand are appropriate.

In *Salguero-Escobar*, we reviewed the trial court's order granting Salguero-Escobar a new trial on the basis that cellular records, which contradicted the complaining witness's trial testimony, constituted newly discovered evidence under CrR 7.5(a)(3). Counsel for Salguero-Escobar had subpoenaed the cellular records before trial, but the

2

cellular company delayed sending the records and defense counsel did not receive them until three days after the jury's guilty verdict.

The trial court determined, and we agreed, that the cellular records were material, were not cumulative of evidence introduced at trial, and would have probably changed the result of the trial.[1] Specifically, the records would have contradicted complaining witness Joette Talley's trial testimony that she barely knew Salguero-Escobar and that she had never spoken to him on the phone. The records established that Talley had called Salguero-Escobar late one night soon after they first met and that they spoke for 13 minutes. We determined, however, that the cellular records did not satisfy one of the five prongs of the "newly discovered evidence" test and concluded that the trial court had erred by granting a new trial on that particular basis.

We then noted our ability to affirm the trial court on any basis supported by the record. We suggested that the facts likely warranted affirming on the basis of CrR 7.5(a)(8), that substantial justice has not been done. But instead of affirming on that

---

[1] The trial court explained: "There was no physical, documentary or other type of non-testimonial evidence offered by the State [at trial] to support Ms. Talley's testimony. In the truest sense, the result of this case was based entirely on the jury's assessment of the credibility of . . . the defendant and Ms. Talley." Clerk's Papers (CP) at 225.

3

basis, we determined that the proper course was to remand so the trial court could enter

formal findings and conclusions.

On remand, the trial court considered evidence in addition to the cellular records.

The trial court considered photographs taken by Salguero-Escobar inside Talley's house.

These photographs further contradicted Talley's trial testimony, which was that Salguero-

Escobar had never been inside her house except the night of the alleged rape. One

photograph even showed Talley in a mirror's reflection. The trial court found, "the

photographs, should they be admitted . . . would . . . bolster the defendant's testimony . . .

and again impeach Ms. Talley's testimony." Clerk's Papers (CP) at 226.

The trial court granted Salguero-Escobar's motion for a new trial on the basis that

substantial justice has not been done. In its findings, the court noted that trial occurred

only 47 days after the charges were filed. The trial court explained why the cellular

records were not introduced at trial and why Salguero-Escobar was not at fault for this.

The court explained that defense counsel had subpoenaed the cellular records, had

notified the cellular company of the impending trial date, and had called the company

repeatedly to implore it to expedite production of the records. Salguero-Escobar was not

at fault because he had once requested and obtained a trial continuance and had asked for

4

a second trial continuance. But because of his own counsel's contrary argument, the trial

court denied Salguero-Escobar's second continuance request.

The trial court explained with particularity why the original verdict, based on

nontangible evidence, must here give way to a future verdict based on the unintroduced

tangible evidence:

> 2.1 The credibility of the defendant and of the complaining witness
> was the primary and most dominant feature of this trial. Thus, any evidence
> that substantially, perhaps fatally undermines the credibility of the
> complaining witness is beyond significant; it is critical.
> . . . .
> 2.4 A criminal case is not about winning and losing. It is about
> justice, and assuring that justice is done.
> 2.5 In this case, where the jury had no tangible evidence, but
> nevertheless convicted the defendant of serious felony charges, justice
> demands the grant of a new trial so a second jury might examine . . .
> tangible evidence central in determining the credibility of the two . . . key
> witnesses.

CP at 226-27.

## ANALYSIS

A. STANDARD OF REVIEW FOR GRANTING OR DENYING A NEW TRIAL

An appellate court reviews a trial court's decision whether to grant or deny a new

trial for an abuse of discretion. *State v. Williams*, 96 Wn.2d 215, 221, 634 P.2d 868

(1981). "A trial court abuses its discretion when its decision is manifestly unreasonable

5

or exercised on untenable grounds or for untenable reasons." *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007). A trial court also abuses its discretion when it relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law. *Id.* at 284. Where a trial court grants a new trial, greater discretion is allowed, and a stronger showing of abuse of that discretion is required to set aside such an order. *State v. Hawkins*, 181 Wn.2d 170, 179-80, 332 P.3d 408 (2014).

B.    GRANTING A NEW TRIAL BECAUSE SUBSTANTIAL JUSTICE HAS NOT BEEN DONE

CrR 7.5(a) authorizes a trial court to grant a criminal defendant a new trial if one of eight enumerated causes has materially affected a substantial right of the defendant. One of the enumerated causes is "[t]hat substantial justice has not been done." CrR 7.5(a)(8).

Prior to the rule, courts had recognized that the decision to grant a new trial on the basis that substantial justice has not been done was "an exercise of the inherent power of a trial court." *Cabe v. Dep't of Labor & Indus.*, 35 Wn.2d 695, 697, 215 P.2d 400 (1950).

> "The right of a trial judge to set aside a verdict if [the judge] believes that substantial justice has not been done is probably as old as the jury system itself. . . . [T]he right to trial by jury and the right of the trial judge to set a jury verdict aside and grant a new trial, on the ground that

6

substantial justice has not been done, have existed side by side for centuries in the English courts, and in our state courts since their creation . . . ."

*Id.* at 699 (quoting *Bond v. Ovens*, 20 Wn.2d 354, 147 P.2d 514 (1944)).

In *Brennan v. City of Seattle*, 39 Wash. 640, 645-46, 81 P. 1092 (1905), our high court recognized the preeminent role that justice must play in our system of jurisprudence:

> But, if anything has prevented the ascertainment of the truth as to the facts of a case, in arriving at or announcing a verdict, it necessarily follows that a judgment thereupon cannot be just or right. Courts should not permit results of this kind to stand if the law furnishes any remedy for the wrong. To enforce a rule of law or procedure according to the letter, and thereby stifle the spirit, is a perversion of justice that should not be tolerated in our jurisprudence.

The rule requires the trial court to give definite reasons of law and facts for its order. CrR 7.5(d). When evidence not introduced at trial is the basis for concluding that substantial justice has not been done, the trial court must explain with particularity why the trial was unfair. *See State v. Evans*, 45 Wn. App. 611, 614, 726 P.2d 1009 (1986).

The purpose for requiring particularity is to assure that the trial court has dealt fairly and properly and to enable appellate review of the trial court's exercise of discretion. *Williams*, 96 Wn.2d at 228. Allowing meaningful appellate review places the

burden squarely on the reviewing court to determine whether the trial court properly

granted a new trial:

> [I]t is our hope that trial judges who believe, for whatever reason, that
> substantial justice has not been done will grant new trials, giving their
> reasons therefor in some detail.  Should this court then reverse any trial
> judge, . . . the onus will be upon us and not on the trial judge.

*Sullivan v. Watson*, 60 Wn.2d 759, 765 n.2, 375 P.2d 501 (1962).

*Application of legal standards*

Here, the trial court concluded that substantial justice has not been done based on

cellular records and photographs not introduced at trial.  The trial court explained with

great particularity why Salguero-Escobar did not receive a fair trial.  First, there was little

time between the filing of the two serious charges and the trial.  The State filed the

charges on October 14, 2015.  The initial trial was set for November 2, 2015.  Later, at

defendant's request, trial was continued to December 1, 2015.

Second, Salguero-Escobar was not at fault for the failure to present the cellular

records to the jury.  Defense counsel had issued a subpoena and had repeatedly urged the

phone company to expedite the records.  Salguero-Escobar, personally, requested a

second trial continuance but because of his counsel's contrary argument, the trial court

denied the request.

8

Third, a verdict should be based on good evidence. Here, the jury convicted the defendant of two serious felonies without any tangible evidence. The trial court reasoned that a trial is not about winning or losing, but about justice. For this reason, a second jury should be able to consider critical tangible evidence that seriously undermines the complaining witness's credibility.

Having set forth the trial court's particular reasons why Salguero-Escobar did not receive a fair trial, we now consider the State's arguments why the trial court erred.

1. *The State argues that the trial court erred in granting a new trial based on cumulative evidence*

The State cites *Williams*, 96 Wn.2d at 224, for the proposition that a trial court may not grant a new trial because of unintroduced evidence that is merely cumulative of evidence introduced at trial. Preliminarily, we note that *Williams* did not discuss the substantial justice basis for granting a new trial. Instead, *Williams* discussed the newly discovered evidence basis for granting a new trial. For purposes of our analysis, we will assume that a trial court may not grant a new trial under CrR 7.5(a)(8) when the unintroduced evidence is merely cumulative of evidence introduced at trial.

In *Williams*, the State charged the defendant with the robbery, kidnapping, and murder of a 7-11 convenience store clerk. *Williams*, 96 Wn.2d at 217. During the

robbery, a hidden camera was activated. *Id.* The camera snapped several pictures, including two frames of the robber's profile. *Id.* The profile pictures showed a large black man, wearing glasses, and dressed in an olive drab fatigue jacket and a cap. *Id.* Copies of the pictures were distributed in the neighborhood. *Id.* Weeks later, the 7-11 clerk's body was found in a vacant house on Beacon Avenue. *Id.* She had been stabbed numerous times. *Id.* An anonymous caller later informed police that the defendant was possibly the man in the robbery photographs. *Id.* Police interviewed the defendant, who admitted that he had been to the vacant house on Beacon Avenue three or four times. *Id.* at 218. In addition, he closely resembled the man in the photographs and admitted that his wife and a close family friend thought he was the man in the photographs. *Id.*

At trial, the State's two eyewitnesses identified the defendant as the man they had seen at the 7-11 the night of the robbery. *Id.* The defendant produced 18 witnesses to support his defense of mistaken identity. *Id.* at 219. His central witness testified that he had seen a man the night of the 7-11 robbery dressed like the man in the photographs, but who was not the defendant. *Id.* The defense witness said he saw this same unidentified man at the Veterans Administration (VA) hospital days after the robbery. *Id.* A pharmacist at the VA hospital corroborated this. *Id.* The jury, who could compare the

photographs admitted at trial to the defendant who sat before them, found the defendant guilty of the charged crimes. *Id.*

After the trial, the defendant moved for a new trial based on finding a security guard who worked for the VA hospital who could corroborate the aforementioned defense witnesses. *Id.* at 220. Due to this and other reasons, the trial court granted the defendant a new trial. *Id.*

In reversing the trial court, *Williams* noted that the security guard's testimony would be cumulative evidence, which alone did not justify a new trial. *Id.* at 224-25. *Williams* defined "cumulative evidence" as "'additional evidence of the same kind to the same point.'" *Id.* at 223-24 (quoting *Roe v. Snyder*, 100 Wash. 311, 314, 170 P. 1027 (1918)). The court reasoned that if such evidence alone justified a new trial, there would be no end to litigation. *Id.* at 224.

Here, neither the cellular records nor the photographs inside the complaining witness's house is cumulative evidence. The trial court found that the jury considered only testimonial evidence and that it had no tangible evidence on which it could base its credibility determinations. The unintroduced tangible evidence is not the same kind to the same point as the evidence introduced at trial. On this basis alone, we could distinguish *Williams*. But there is an additional basis.

11

In *Williams*, the photographs of the robber introduced at trial were tangible evidence and strongly established the defendant's guilt because the jurors could compare the photographs with the defendant, who sat before them. *Id.* at 219. The addition of testimony from the security guard would be cumulative of the 18 other defense witnesses called to support defendant's mistaken identity defense. A 19th defense witness on the same issue was therefore unimportant. Here however, the State obtained a conviction without any tangible evidence. Here, the trial court found that the new tangible evidence, the cellular records and the photographs, would be *critical* to a second jury's assessment of the credibility of the two key witnesses.

2.      *The State argues that the trial court erred in granting a new trial based on its own assessment of witness credibility*

The State correctly argues that a trial court may not substitute its judgment of witness credibility for that of the jury. Where there is substantial evidence on both sides of an issue, it is error for a trial court to usurp the role of the finder of fact and, as a 13th juror, substitute its own judgment. *Id.* at 227. But here, the trial court did not grant Salguero-Escobar a new trial because it thought that the complaining witness was untruthful or that Salguero-Escobar was truthful.

Instead, the trial court granted Salguero-Escobar a new trial because the jury based its verdict on testimony alone, which meant "any [tangible] evidence that substantially, perhaps fatally undermines the credibility of the complaining witness is beyond significant; it is critical." CP at 226-27. And because Salguero-Escobar was not at fault for the failure to present the cellular phone records to the jury, "justice demands the grant of a new trial so a second jury might examine . . . tangible evidence central in determining credibility of the two . . . key witnesses." CP at 227. The trial court's findings and conclusions establish that the trial court did not grant a new trial based on its own assessment of witness credibility; rather, it granted a new trial so that a second jury could consider unintroduced tangible evidence that was critical in determining the credibility of the two key witnesses.

Here, the trial court gave definite reasons of law and facts for its order. The reasons it gave described with great particularity why Salguero-Escobar had not received a fair trial. We therefore conclude that the trial court did not abuse its broad discretion in granting a new trial.

We summarily address the State's remaining arguments.

13

> 3.  *The State argues that a new trial may not be granted under CrR 7.5(a)(8) unless the unintroduced evidence meets the newly discovered evidence test of CrR 7.5(a)(3)*

The State argues that a trial court may not grant a new trial under CrR 7.5(a)(8), that substantial justice has not been done, unless the unintroduced evidence meets the newly discovered evidence test of CrR 7.5(a)(3). The State does not cite any authority to support its argument. We therefore decline to consider it. *McKee v. Am. Home Prods. Corp.*, 113 Wn.2d 701, 705, 782 P.2d 1045 (1989).

> 4.  *The State argues that a new trial under CrR 7.5(a)(8) may not be granted when the State presents sufficient evidence to convict*

The State claims that the trial court's order for a new trial "calls into question the sufficiency of the evidence" to convict. Appellant's Br. at 27. The State then devotes several pages of its brief explaining that it presented sufficient evidence to convict Salguero-Escobar. The State then argues: "Whether substantial justice has been done is contingent upon whether a reasonable jury could have found the elements of the crime charged beyond a reasonable doubt." Appellant's Br. at 32. In essence, the State argues that a new trial may never be granted under CrR 7.5(a)(8) if the State presents sufficient evidence to convict. This is not the law, and the State fails to cite any authority to support it. We therefore decline to consider it. *McKee*, 113 Wn.2d at 705.

14

No. 35209-9-III
*State v. Salguero-Escobar*

     *5.    The State argues that defense counsel provided effective assistance of counsel*

The State lastly argues that defense counsel provided effective assistance of

counsel. The State fails to explain how this factors into our analysis. We therefore do not

address the argument.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.               Siddoway, J.

15