**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>ARTHUR NATHANIEL AIKEN,<br><br>Petitioner. | No. 78553-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — Aiken seeks relief from personal restraint regarding one of three first degree murder convictions imposed following his trial by jury in 1965. Aiken acknowledges that his petition is untimely, but contends that his claims are nevertheless reviewable based on newly discovered evidence and the actual innocence doctrine. Because we conclude that Aiken failed to establish an exception to the one year time bar, we deny this untimely petition.

FACTS

In 1965, 19 year old Arthur Aiken and his 20 year old codefendant Antonio Wheat were convicted by a jury of three counts of murder in the first degree for the killing of three Seattle area gas station attendants during the course of three separate robberies.[1] State v. Aiken, 72 Wn.2d 306, 309, 434 P.2d 10 (1967) (Aiken I), judgment vacated sub nom. Wheat v. Washington, 392 U.S. 652, 88 S. Ct. 2302,

---

[1] The jury imposed by special verdict a sentence of death. Aiken I, 72 Wn.2d at 309. The death sentences were subsequently commuted by the United States Supreme Court. Wheat v. Washington, 403 U.S. 943, 91 S. Ct. 2283, 29 L. Ed. 2d 856 (1971). On remand, the trial court sentenced both defendants to consecutive life sentences for each count.

20 L. Ed. 2d 1357 (1968), adhered to on remand, 75 Wn.2d 421, 452 P.2d 232 (1969) (Aiken II), rev'd, 403 U.S. 946 (1971) (table decision). This petition concerns Aiken's conviction on count III for the April 24, 1965 murder of James Harp. Id.

Witnesses identified Wheat's car at the service station where Harp was killed, and Wheat was arrested later that day. Id. Wheat initially denied that either he or Aiken were involved in the robbery and murder of Harp. A few hours later, Wheat gave another statement admitting his involvement but claiming that Aiken fired the fatal shot. Id. at 316. Aiken was arrested the following day. Id. at 310.

Upon further questioning, Wheat admitted that he was present during all three murders but claimed that Aiken was the one who shot the men. Id. at 310-11, 313-14, 316. After police allowed Aiken to read Wheat's statement implicating him in the second killing, Aiken asked to confront Wheat. Id. at 332-33. In Aiken's presence, Wheat refused to disavow his statement. Id. at 333. Aiken then admitted his involvement in the first two murders but insisted that Wheat shot both men. Id. at 311-13, 314-16. Regarding the third murder, Aiken asserted that he was asleep in the car outside the service station while Wheat robbed and murdered Harp. Id. at 318-19. The following day, in another statement to police, Wheat changed his story and claimed that he robbed and murdered Harp while Aiken slept in the car. Id. at 316-18. Wheat did not change his statements regarding the first two murders.

Wheat and Aiken were tried jointly in the fall of 1965. Aiken II, 75 Wn.2d at 422. Their written statements to police were admitted into evidence. Aiken I, 72

2

Wn.2d at 310. The jury was instructed that one defendant's statement could not be used against the other. Aiken unsuccessfully moved to dismiss count III on the ground that there was insufficient evidence of his involvement in Harp's murder. The jury convicted both Aiken and Wheat of all three murders. Id. at 309.

On November 22, 2017, Aiken filed a CrR 7.8 motion in the trial court seeking to vacate his conviction for the murder of Harp or for a new trial on the basis of newly discovered evidence. Aiken presented a declaration from Wheat stating he was willing to testify that Aiken was asleep in the car while Wheat robbed and murdered Harp without Aiken's knowledge. Alternatively, Aiken argued that Wheat's declaration established a "gateway" actual innocence claim, thereby authorizing the court to consider three untimely claims of trial court error.

The trial court held an evidentiary hearing in early 2018. At the hearing, Wheat testified that he admitted during an interview with Seattle Met Magazine that he acted alone in killing Harp while Aiken slept unaware in the car. James Ross Gardner, Tony Wheat Has Been Sorry for So Long, SEATTLE MET MAGAZINE (Apr. 27, 2015, 8:00 am), https://www.seattlemet.com/news-and-city-life/2015/04/tony-wheat-has-been-sorry-for-so-long-may-2015. Wheat also testified that the first two statements he gave to police in 1965 putting the blame on Aiken were not true and that the statement he gave admitting that he acted alone in committing the Harp murder was true. Aiken testified that in 2017, Wheat told him for the first time that he would be willing to testify accordingly.

Following the hearing, the court concluded that Wheat's declaration and testimony did not constitute newly discovered evidence and that Aiken had not met the standard required for a gateway claim of actual innocence. Specifically, in its oral ruling, the court stated that "[t]here is no circumstance under which this court can find, again, that no reasonable juror would find the defendant guilty." Accordingly, the court found Aiken's motion to be time-barred under RCW 10.73.090 and transferred it to this court for consideration as a personal restraint petition pursuant to CrR 7.8(b)(2).

## DISCUSSION

### I. Newly Discovered Evidence

Generally, a personal restraint petition must be filed within one year after the judgment and sentence becomes final. RCW 10.73.090. A petitioner bears the burden of showing that the petition was timely filed. In re Pers. Restraint of Quinn, 154 Wn. App. 816, 833, 226 P.3d 208 (2010). Aiken's judgment and sentence became final almost 50 years ago, so his collateral attack is time-barred unless he can show that an exception to the one year time limit applies.

Aiken contends that his petition is not untimely because Wheat's recantation and offer to testify constitutes newly discovered evidence. RCW 10.73.100(1) provides that the one year time limit does not apply to a petition based on "[n]ewly discovered evidence, if the defendant acted with reasonable diligence in discovering the evidence and filing the petition or motion." Newly discovered evidence is evidence that "'(1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of

4

due diligence; (4) is material; and (5) is not merely cumulative or impeaching.'" In re Pers. Restraint of Lord, 123 Wn.2d 296, 319-20, 868 P.2d 835 (1994) (emphasis omitted) (quoting State v. Williams, 96 Wn.2d 215, 223, 634 P.2d 868 (1981)). The absence of any one of these five factors is fatal to the claim. State v. Macon, 128 Wn.2d 784, 800, 911 P.2d 1004 (1996).

We conclude that Aiken has not established that Wheat's testimony constitutes newly discovered evidence. First, although neither defendant testified at trial, the jury considered Wheat's written statement claiming that he alone murdered and robbed Harp while Aiken slept in the car and Aiken's own statement that he slept while Wheat committed the crime. Second, although the jury was instructed that one defendant's statement could not be used against the other, the substance of Wheat's offer to testify was not discovered after the trial. Federal and state courts consistently hold that a previously silent codefendant's new willingness to provide exculpatory testimony does not constitute "newly discovered evidence." See, e.g. United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir. 1992); United States v. Jasin, 280 F.3d 355, 368 (3rd Cir. 2002); United States v. Freeman, 77 F.3d 812, 817 (5th Cir. 1996); United States v. Theodosopoulos, 48 F.3d 1438, 1449-50 (7th Cir. 1995); United States v. Muldrow, 19 F.3d 1332, 1339 (10th Cir. 1994); State v. Warren, 592 N.W.2d 440, 450 (Minn. 1999); State v. Jackson, 264 Neb. 420, 433, 648 N.W.2d 282 (2002); see also State v. Peele, 67 Wn.2d 724, 732, 409 P.2d 663 (1966) (uncorroborated affidavit from an accomplice purporting to exonerate a defendant should not result in a new trial

"unless it appears that the newly discovered evidence is of such significance and cogency that it will probably change the result of the trial").

Aiken asks us to adhere to the contrary rule followed in the First Circuit, which holds that the "newly discovered evidence" language of Federal Rule 33 encompasses evidence that was "unavailable" at the time of trial. <u>United States v. Montilla-Rivera</u>, 115 F.3d 1060, 1066 (1st Cir. 1997); <u>United States v. Hernández-Rodríguez</u>, 443 F.3d 138, 144 (1st Cir. 2006). But, even in the First Circuit, new exculpatory affidavits should be viewed with "'great skepticism'" because "[a] convicted, sentenced codefendant has little to lose (and perhaps something to gain) by such testimony." <u>Hernández-Rodríguez</u>, 443 F.2d at 144 (alteration in original) (quoting <u>Montilla-Rivera</u>, 115 F.3d at 1066). We decline Aiken's invitation to ignore the great majority of federal and state courts and follow the First Circuit, particularly where the substance of Wheat's new offer to testify was already considered by the jury.

Moreover, given significant evidence that Aiken participated in Harp's murder, we agree with the State that the trial court properly found Wheat's offer to testify would probably not have changed the result at trial.

> [Wheat and Aiken] were together from early Friday evening, on April 23, 1965, until dawn the next morning after the [Harp] murder. Aiken stated that Wheat suggested they "hit" the [gas station where the Harp murder occurred]. Aiken knew Wheat left the car to go into the station. Aiken knew how [Harp] was dressed. Aiken was in a position to observe all entrances to the service station. He was armed with a .25 caliber automatic pistol. Aiken's .22 caliber pistol was used to kill [Harp]. Aiken participated with Wheat in two prior robberies of service stations and murders of their attendants. The pattern followed in those instances was very similar to the robbery

6

> [and third murder]. The jury was entitled to disbelieve the statements of Aiken that he was asleep and did not participate.

Aiken I, 72 Wn.2d at 348-49.

The State also points out that in the event of a new trial, it would impeach Wheat with his previous inconsistent statements that Aiken was involved with Harp's murder, thereby damaging Wheat's credibility. Aiken has not established that Wheat's testimony would probably change the result of the trial.

Moreover, Aiken did not act with reasonable diligence in bringing his CrR 7.8 motion. Aiken claimed in his motion that he was unaware that Wheat was willing to testify until he learned about Wheat's Seattle Met Magazine interview in 2015. But, Wheat testified at the evidentiary hearing that while they were both at the prison in Monroe in the 1990s, he provided Aiken with a written statement detailing his sole involvement in the Harp murder in order to assist Aiken with a clemency petition. Yet Aiken took no further action until 2017. He has not credibly explained the delay.

II. Actual Innocence

Aiken further asserts that he is entitled to challenge his conviction based on equitable tolling of the one year time limit under the "actual innocence" doctrine. There are two forms of actual innocence claims. The first is a freestanding constitutional claim in which innocence itself provides a basis for relief. In re Pers. Restraint of Weber, 175 Wn.2d 247, 256, 284 P.3d 734 (2012). The second are "gateway" actual innocence claims, which are "used to avoid procedural time bars

so that a court may review other claimed constitutional errors." Id. at 256. Aiken asserts only a gateway innocence claim.

The gateway actual innocence exemption applies if, "after evaluating the new reliable evidence in light of the evidence presented to the jury, a court must be persuaded that 'it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt.'" Id. at 260 (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). Equitable tolling under the actual innocence doctrine remains a very narrow exception applied only in circumstances where justice requires, and "generally should not be used in place of the statutory exceptions or exemptions to the time bar provided in RCW 10.73.090." Id. at 256. The petitioner must support such allegations with new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial. Id. atat 258. The court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." Schlup, 513 U.S. at 332.

Aiken claims that Wheat's offer to testify that he acted alone in killing Harp, coupled with his three asserted trial errors, establish that he has met his burden to an actual innocence gateway claim. However, as discussed above, Wheat's offer to testify is substantively duplicative of his statements admitted at the 1965 trial. The extreme delay in offering the testimony and Wheat's lack of credibility also weigh strongly against an actual innocence gateway claim.

Moreover, Aiken cites no persuasive authority for the proposition that claims of trial error constitute "new reliable evidence" for the purpose of establishing an actual innocence gateway claim. His reliance on House v. Bell, 547 U.S. 518, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) is misplaced. There, the United States Supreme Court observed that a

> habeas court must consider 'all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.' Based on this total record, the court must make a 'probabilistic determination about what reasonable, properly instructed jurors would do.' The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence and reasonable jurors.

House, 547 U.S. at 537-38 (internal citations omitted) (quoting Schlup, 513 U.S. at 327-28, 329). Here, Aiken does not assert that any relevant evidence was improperly excluded at trial. Rather, he claims that (1) his statements were admitted in violation of his right to counsel under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), (2) the joint trial violated his right to confrontation under Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), and (3) the jury instructions were erroneous because the State did not prove he acted with knowledge of the crime Wheat intended to commit. But, the alleged existence of trial error is not "evidence" to be considered in evaluating an actual innocence gateway claim. Rather, the petitioner must show that new reliable evidence justifies an equitable tolling of the time bar that would allow a court to reach the merits of the asserted constitutional errors. Weber, 175 Wn.2d at 258. Because Aiken has not made this showing, we need not reach his claims.

Aiken has not met his burden to establish an exception to the one year time bar for a collateral attack on his judgment and sentence. Because Aiken's petition is untimely, it must be dismissed.

WE CONCUR:

Appelwick, J.

Andrus, A.C.J.