# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57700-3-II |
| Appellant, | |
| v. | |
| RANDY COY HENDERSON, | UNPUBLISHED OPINION |
| Respondent. | |

VELJACIC, J. — The State of Washington appeals the trial court's order granting Randy C. Henderson's motion for a new trial. The State contends that the court erred in finding that Henderson's proffered witness testimony was newly discovered evidence that warranted a new trial under CrR 7.5(a)(3). Because the court did not abuse its discretion in granting the motion, we affirm.

FACTS

I.    BACKGROUND

In 1995, police found John Robinette beaten nearly to death in his apartment. *State v. Henderson*, noted at 101 Wn. App. 1077, 2000 WL 1156875, at \*1 (2000). There was evidence of forced entry, robbery, and a violent struggle. *Id.* Police arrested Henderson the next day in connection with the incident. *Id.*

Police transported Henderson to the jail for booking. *Id*. A police officer noticed Henderson laughing about his $1 million bail. *Id*. The officer commented that it did not look like he would be released and Henderson responded, "'Well, O.J. got off.'" Rep. of Proc. (RP) (Mar. 20, 1996) at 407. The officer told Henderson that the two had something in common because they "'both did it.'" RP (Mar. 20, 1996) at 407. Henderson responded, "'I might have done it, but he deserved it.'" RP (Mar. 20, 1996) at 407.

Robinette died several days after the beating as a result of blunt force injuries to his head. *Henderson*, 2000 WL 1156875, at *1. A nail-studded 2x4 board had been used to inflict Robinette's fatal injuries. *Id*.

## II.    CHARGES AND TRIAL

The State charged Henderson with aggravated murder in the first degree.[1] Police also arrested Jimmy Pyles and Geoffrye Foutch in connection with the crime. *Id*. Both later pleaded guilty to murder in the first degree. *Id*. Both have served their sentences and have been released.

Henderson proceeded to trial. The police officer from the jail testified to Henderson's statements. There was also testimony that Henderson was at the house of a mutual friend where the plan was devised and that he rode with Foutch to Robinette's apartment. But there was no physical evidence linking Henderson to the crime. And no eye witness testimony of what happened inside Robinette's apartment. Neither Foutch nor Pyles testified at the trial.

The jury found Henderson guilty as charged. The trial court sentenced Henderson to life without the possibility of parole.

---

[1] Henderson was also charged and convicted of felony murder in the first degree and unlawful possession of a controlled substance. These convictions have since been vacated. *See In re Pers. Restraint of Henderson*, 316 P.3d 481 (2014) (court order) and *State v. Henderson*, No. 55935-8-II (Wash. Ct. App. Dec. 14, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2055935-8-II%20Unpublished%20Opinion.pdf.

III.     CrR 7.8 MOTION

In 2021, Henderson filed a CrR 7.8 motion for relief from judgment and requested a new trial based on newly discovered evidence from Foutch alleging Henderson was not involved in the murder.[2]  The trial court held evidentiary hearings on Henderson's motion in April and May of 2022.

Foutch testified that he was homeless in 1995 after growing up in group homes.  Foutch and Pyles were close friends who met when they were seven years old and living together at a boys ranch.

Foutch testified that Robinette had attempted to rape him when he was 14 or 15 years old. He also testified that Foutch's girlfriend's teenage brother told him that Robinette had raped him. Foutch was enraged.  He and Pyles devised a plan to beat up Robinette and steal from him.

On the day of the planned beating, Foutch rode over to Robinette's apartment with Henderson.  Foutch testified that Henderson helped force in Robinette's door, but Foutch does not remember him going inside.  Police reports also indicate that Pyles stated that Henderson "forced the door open."  Clerk's Papers (CP) at 86.  Foutch claims that when Henderson realized what he and Pyles had planned, Henderson left.

---

[2] Henderson also alleged a due process violation, arguing that the State failed to preserve deoxyribonucleic acid (DNA) evidence that could have exonerated him.  In its ruling, the trial court stated, "Additionally[,] the issue of spoliation of evidence was raised, and the State agrees that the physical evidence in this case was either lost, or not properly stored, so no testing of any value was able to be done on the remaining evidence."  Clerk's Papers (CP) at 256.  But the court did not consider this sufficient alone to grant a new trial.

Foutch testified Henderson did not play a role in Robinette's death. When asked why he told police in 1995 that Henderson was involved, Foutch stated that he did not know or care about Henderson and he was angry with Henderson for not helping on the night of the murder.[3] Foutch testified that he wanted to come forward now because it was "the right thing to do." RP (Apr. 18, 2022) at 19.

## IV. TRIAL COURT DECISION

The trial court determined that Foutch's testimony was reliable. The court noted that it was not required to address reliability but it "[felt] the need to." CP at 259. The court found that Foutch's testimony passed the *Williams*[4] factors for newly discovered evidence. The court specifically noted that Foutch's testimony at the hearing was in line with a police report that included Pyles's statement that Henderson forced in the front door of Robinette's apartment. The trial court granted Henderson's CrR 7.8 motion, vacated his judgment and sentence, and ordered a new trial under CrR 7.5(a)(3) based on newly discovered evidence.

The State appeals.

## ANALYSIS

As an initial matter, the State argues that the trial court erred in determining that Foutch's testimony was reliable. Henderson points out that a reliability finding is not necessary in determining if evidence is newly discovered to warrant a new trial. We agree with Henderson that

---

[3] The court also heard from two other individuals, Josephine Gilbert and Nathan Parker, but the court found their testimony was not newly discovered evidence. That finding is not before this court on appeal.

[4] *State v. Williams*, 96 Wn.2d 215, 634 P.2d 868 (1981).

in this case reliability is not a factor in deciding if evidence is newly discovered.[5] But even so, the trial court's decision to grant a new trial was not an abuse of discretion.

I.    NEWLY DISCOVERED EVIDENCE

The State contends that the trial court erred by granting Henderson's motion for a new trial because Foutch's testimony was not newly discovered evidence under the *Williams* factors. We disagree.

As discussed above, a trial court may grant a motion for a new trial based on newly discovered evidence if the proponent can establish that the new evidence "(1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching." *State v. Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981). The absence of any one of these factors is grounds to deny a new trial. *Id.*; *State v. Larson*, 160 Wn. App. 577, 586, 249 P.3d 669 (2011).

We review for an abuse of discretion a trial court's grant of a motion for a new trial. *State v. Lupastean*, 200 Wn.2d 26, 36, 513 P.3d 781 (2022). Trial courts generally have "wide discretion in deciding whether or not to grant a new trial" because "the trial judge who has seen and heard the witnesses is in a better position to evaluate and adjudge than can [appellate courts] from a cold, printed record." *State v. Lopez*, 190 Wn.2d 104, 117, 410 P.3d 1117 (2018) (internal quotation marks omitted) (quoting *State v. Hawkins*, 181 Wn.2d 170, 179, 332 P.3d 408 (2014)). We give

---

[5] Additional factors are considered when newly discovered evidence is in the nature of testimonial recantation from a trial witness. *State v. Macon*, 128 Wn.2d 784, 804, 911 P.2d 1004 (1996). One of the factors is whether the recantation is reliable. *Id.* But here, the evidence was not testimonial recantation because Foutch did not testify at trial. Therefore, his testimony would not need to meet the additional factor of reliability. The trial court noted as much in its ruling. For this reason, we do not reach the issue of whether Foutch's testimony was reliable.

"even greater discretion to decisions to grant a new trial." *Hawkins*, 181 Wn.2d at 179. A trial court abuses its discretion by reaching a conclusion no reasonable judge would reach. *State v. Hager*, 171 Wn.2d 151, 156, 248 P.3d 512 (2011).

### A.    *Williams* Factors Two, Three, and Four

The State concedes that Foutch's statement was discovered after trial and could not have been discovered before trial with the exercise of due diligence. The State also concedes that Foutch's testimony is material. We accept the State's concession because Foutch came forward after trial, there was no evidence that he would testify on Henderson's behalf at trial, and Foutch's statement suggests Henderson did not commit the crime so it is material.

### B.    *Williams* Factors One and Five

#### 1.    Probably Change the Result of Trial

To determine whether the proffered evidence will probably change the result of the trial, the court considers the "credibility, significance, and cogency of the proffered evidence." *State v. Wood*, 19 Wn. App. 2d 743, 776, 498 P.3d 968 (2021), *review denied*, 199 Wn.2d 1007 (2022).

Here, Foutch testified that he wanted to do the right thing. His testimony shed light on an incident where there was no physical evidence linking Henderson to Robinette's murder. And there was no eye-witness testimony describing what happened inside Robinette's apartment. Foutch clearly recalled events from the night of the murder and his explanation of why he did not come forward sooner because he was angry with Henderson for not helping was plausible. The State argues that Foutch's testimony was not significant because Henderson was charged as an

accomplice. But that is not apparent from the record before us.[6] Still, Henderson was convicted of aggravated murder in the first degree, which requires premeditation. RCW 9A.32.030(1)(a). Therefore, an eye-witness testifying that Henderson left when he learned of Pyles and Foutch's plan would be significant regardless of whether Henderson was charged as an accomplice or a principal, as it could negate the premeditation element and result in culpability for lesser charges.

Accordingly, based on the credibility, significance, and cogency of the proffered evidence, the trial court did not abuse its discretion in ruling that it is likely that Foutch's testimony would probably change the result of the trial.

### 2. Merely Cumulative or Impeaching

To determine whether the proffered evidence is merely cumulative or impeaching we look to the evidence at trial and whether the sole purpose of the new evidence is to impeach or discredit evidence produced at trial. *State v. Hutcheson*, 62 Wn. App. 282, 300, 813 P.2d 1283 (1991).

Here, there is no question that Foutch's testimony was not cumulative. The State focuses on whether it was impeaching, arguing its sole purpose was to discredit the State's evidence that Henderson was part of the plan and rode with Pyles to Robinette's apartment. But Foutch's testimony would be the only testimony of what happened inside the apartment and could potentially exonerate Henderson. Accordingly, Foutch's testimony is not merely cumulative or impeaching.

---

[6] The State cites to the clerk's papers in Henderson's direct appeal to support that Henderson was charged as an accomplice. But the clerk's papers from Henderson's direct appeal are not included in our record—the State only requested that the report of proceeding from Henderson's direct appeal be transferred. The report of proceedings do not contain the jury instructions, as they were not read into the record. Henderson counters that while the State mentioned accomplice liability during trial, its theory of the case was that Henderson actually committed the crime. Although the record is not before us, as discussed herein this distinction is ultimately immaterial.

Because Henderson's proffered evidence satisfies the *Williams* factors for newly discovered evidence, the trial court had tenable grounds to grant Henderson's motion for a new trial. There was no abuse of discretion.

## CONCLUSION

We affirm the trial court order granting Henderson's motion for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Maxa, P.J.

Price, J.

8